[No. A079747. First Dist., Div. Four. Nov. 13, 1998.]

ALTERNATIVE SYSTEMS, INC., Plaintiff and Appellant, v.
THOMAS P. CAREY, Defendant and Respondent.

## Counsel

John Halley and Jeffrey S. Gananian for Plaintiff and Appellant.

Farbstein & Blackman, John S. Blackman and Thomas P. Carey for Defendant and Respondent.

## Opinion

**REARDON, J.**—The fee dispute underlying this litigation has been submitted (1) to advisory arbitration before a local bar association pursuant to Business and Professions Code section 6200 et seq.,[1] on appellant's demand; (2) for trial de novo in state court, by appellant; (3) for trial de novo in federal court (but dismissed) by respondent; and (4) to binding arbitration before the American Arbitration Association (AAA) on respondent's demand. The matter is before us on appeal from the judgment confirming the AAA award. There has been no trial de novo.

This appeal obliges us to determine whether giving effect to a clause in an attorney-client fee agreement calling for binding arbitration of fee disputes before the AAA contravenes the rights of clients established by the pertinent MFA provisions. We conclude it does and thus the arbitrator exceeded his powers by purporting to enter an award under authority of the binding arbitration clause. We reverse the judgment confirming the arbitral award. Appellant is entitled to a de novo trial.

### I. Facts

In May 1995 appellant Alternative Systems, Inc. (ASI) and respondent Thomas P. Carey entered into an "Attorney-Client Fee Contract." This contract was to govern Carey's representation of ASI in intellectual property litigation against Lockheed Corporation and others. Remuneration was on a

---

[1]The mandatory fee arbitration statutes, hereafter MFA. Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

contingency fee basis. As well, the contract called for continuation of a $7,000 per month retainer for services rendered in conjunction with the Lockheed litigation and other matters, and established the amount of deferred compensation ($104,027.93) owing to Carey, to be paid from any recovery in the Lockheed litigation. Further, the contract stated: "In the event of any dispute arising under this Contract for Legal Services, . . . Client and Attorney agree that such dispute shall be resolved by binding arbitration to be conducted by the [AAA] to be arbitrated in accordance with their rules and procedures."

A fee dispute arose. In May 1996 Carey demanded binding arbitration before the AAA. Countering, ASI served Carey and the AAA with its demand to arbitrate under the "California State Bar Mandatory Fee Arbitration Rules of Procedure," indicating it wanted "advisory" as opposed to "binding" arbitration. ASI also pressed Carey to direct the AAA to dismiss the pending arbitration.

The AAA responded on June 18, 1996, stating it would proceed with the matter "absent a court order to the contrary or the agreement of the parties." ASI reiterated its objection, asserting to the AAA that it "does not recognize the jurisdiction of the AAA and respectfully refuses to cooperate . . . ."

The MFA hearing demanded by ASI took place on September 30, 1996, before a three-member arbitration panel of the San Mateo County Bar Association. Carey rejected the panel's award and, on November 6, 1996, filed a federal action requesting a trial de novo. (*Carey* v. *Alternative Systems, Inc.* (N.D.Cal. 1996 [Dock. No. C-96-4028 CW].) ASI moved to dismiss the federal action for lack of subject matter jurisdiction; Carey voluntarily dismissed.

Likewise, ASI rejected the award and, on November 12, 1996, filed a complaint in state court calling for a trial de novo. Carey was served January 13, 1997. The complaint included a request to stay the AAA proceeding. The case management conference was set for March 28, 1997.

On February 11, 1997, ASI served on Carey and the AAA a motion to stay the AAA arbitration and Carey served a cross-complaint on ASI. Among other points, ASI asserted that the AAA arbitration had been preempted by its election to proceed under the MFA. The motion to stay was set for the same date as the case management conference. Carey, on his part and among other points, gave notice in the cross-complaint of his election to proceed with a trial de novo following the San Mateo County Bar Association arbitration.

Meanwhile, counsel for ASI participated in selecting the arbitrator and scheduling the hearing, moved to recuse Carey's attorney and stipulated to a briefing schedule on a procedural issue.

The AAA arbitration was held on February 21, 1997. ASI's counsel made a special appearance for the purpose of registering its continuing objection to the AAA's jurisdiction and refusal to arbitrate. Two days after the hearing, ASI informed the AAA arbitrator "it has severed and revoked [the] arbitration clause from the fee agreement." The arbitrator rendered his award on February 25, 1997, granting Carey $171,062.46 and assessing ASI another $1,985.63 in costs. On March 11, ASI "dropped" its motion to stay the AAA arbitration.

Carey moved successfully to confirm the award. The court denied ASI's subsequent motion to vacate the award and this appeal followed.

## II. DISCUSSION

ASI urges that the instant arbitration award must be vacated because the public policy and statutory rights manifest in the MFA are contravened when a client is required to submit, over protest, to binding private arbitration of a fee dispute with his or her attorney.

### A. The Arbitral Award Is Subject to Our Review

Peeling away the onion layers of this case, we begin with the general principle of arbitral finality. ■ Because of the strong public policy favoring arbitration as a speedy and relatively inexpensive method of dispute resolution, we subject arbitration awards to very narrow judicial review. We will not examine the merits of the dispute, the reasoning of the arbitrator, or the sufficiency of the evidence. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Judicial review is restricted to the statutory grounds for vacating or correcting an award, as found in Code of Civil Procedure sections 1286.2 and 1286.6. (*Moncharsh* v. *Heily & Blase, supra,* at pp. 27-28; *Ceriale* v. *AMCO Ins. Co.* (1996) 48 Cal.App.4th 500, 504 [55 Cal.Rptr.2d 685].)

■ Among other reasons, an award must be vacated where the "arbitrators exceeded their powers . . . ." (Code Civ. Proc., § 1286.2, subd. (d).) An arbitrator exceeds his or her powers when deciding purported rights under an illegal contract. ". . . [T]he power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise. [Citations.] In the absence of a valid

contract no such rights can arise and no power can be conferred upon the arbitrator to determine such nonexistent rights." (*Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603, 610 [204 P.2d 23].) The defense of illegality of the entire transaction can be raised at any stage of the proceeding, including opposition to a motion to confirm. (*Id.* at pp. 609-612; *South Bay Radiology Medical Associates* v. *Asher* (1990) 220 Cal.App.3d 1074, 1080-1081 [269 Cal.Rptr. 15].)

The question of the validity of the arbitration agreement itself—as distinguished from the entire underlying contract—is likewise for the court to determine. A written arbitration agreement "is valid, enforceable and irrevocable, save upon such grounds as exist for the [rescission][2] of any contract." (Code Civ. Proc., § 1281.) On a petition to compel arbitration, *the court* must deny the petition where grounds exist for rescinding the agreement to arbitrate. (*Id.*, § 1281.2, subd. (b); *Engalla* v. *Permanente Medical Group, Inc.*, *supra*, 15 Cal.4th at p. 973.)

But can a defense to an arbitration award going to the validity of the arbitration agreement itself—as opposed to the entire underlying contract—be waived by not seeking a judicial determination prior to commencing arbitration? The court in *Bayscene Resident Negotiators* v. *Bayscene Mobilehome Park* (1993) 15 Cal.App.4th 119 [18 Cal.Rptr.2d 626] suggested it can. There, tenants took the position that the owners could only attack the constitutionality of an arbitration requirement by forcing them to file a petition to compel arbitration. Thus by "voluntarily" proceeding with arbitration, they contended the owners were limited to the grounds for vacating the award set forth in Code of Civil Procedure section 1286.2. Said the court: "Normally, . . . a party who questions the validity of the arbitration agreement may not proceed with arbitration and preserve the issue for later consideration by the court after being unsuccessful in the arbitration. (See *Moncharsh* v. *Heily & Blase*, *supra*, 3 Cal.4th at pp. 29-31.)" (*Bayscene Resident Negotiators* v. *Bayscene Mobilehome Park*, *supra*, at p. 129.) The court concluded, nonetheless, that there was no waiver because the owners' participation was not voluntary. They had objected repeatedly to the arbitration proceedings and faced potential criminal conviction if they violated the ordinance calling for binding arbitration.

 Likewise, in this case ASI objected repeatedly to the arbitration, but nonetheless also participated in selecting the arbitrator, scheduling the hearing, etc., after Carey and the AAA refused to back down. ASI served its

---

[2]The actual statutory language uses the term "revocation" instead of "rescission." But it is offers that are revoked; contracts are extinguished by rescission. (*Engalla* v. *Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973 [64 Cal.Rptr.2d 843, 938 P.2d 903].)

complaint on Carey on January 13, 1997, praying for a stay of the AAA arbitration and other relief. On January 28, 1997, the AAA arbitrator set the hearing date for February 21, 1997. ASI served its formal motion to stay the proceeding on February 11, scheduling the hearing to coincide with the March 28 trial setting conference. Simultaneously, Carey in his cross-complaint requested a trial de novo following the local bar association advisory arbitration award. ASI's general counsel made a limited appearance at the AAA hearing for the sole purpose of registering the company's refusal to arbitrate.[3]

Although from this sequence of events it is apparent that ASI gave out some mixed messages, we conclude that ASI did not voluntarily participate in the arbitration. In the end, it did not participate at all except to object. The AAA and Carey knew that ASI was calling for a trial de novo, they knew the motion to stay was pending, yet they proceeded anyway.

Does ASI's "mixed message" behavior amount to an estoppel? No, because viewing the whole situation, including ASI's invocation of the MFA, its suit for de novo judicial review in which it prayed for a stay of the AAA proceedings, and finally its motion for stay, there could be no detrimental reliance on Carey's part. Moreover, Carey himself put out mixed messages by requesting a trial de novo following the advisory award of the local bar association, while at the same time pursuing the AAA arbitration. And finally, there was some logic in ASI's decision to schedule the hearing on the motion to stay on the same date as the case management conference.

B. *Giving Effect to Arbitration Clause Under Which the Arbitral Award Was Rendered Contravened ASI's Rights Under the MFA*

 Having concluded that the arbitrator's award here is subject to judicial review, we now turn to the question whether granting relief under the arbitration clause contained in the fee agreement violated ASI's rights under the MFA.

In a nutshell, the MFA creates a procedure whereby local bar associations can adopt and sponsor systems for arbitrating fee disputes, subject to review by the Board of Governors of the State Bar. (§ 6200, subd. (d).) In conducting such arbitrations, the arbitrator or arbitrators can take and hear evidence, administer oaths and compel attendance of witnesses and production of documents. (*Id.*, subd. (g)(1)-(3).)

The MFA also affords clients important procedural protections. At the time Carey demanded binding arbitration before the AAA in May 1996,

---

[3]According to Carey, ASI's special counsel for the arbitration informed the arbitrator he would be late, but never appeared at all.

these protections came into play when an attorney sued a client for fees. Written notice of the client's right to arbitrate under the MFA "prior to or at the time of service of summons or claim in an action against the client" was, and is, required. (§ 6201, subd. (a).) The sanction for failure to give notice was, and is, dismissal, at the court's discretion. (*Ibid.*) If an attorney "commenc[ed] an action in any court," the client could, and still can, stay the action by filing a request for arbitration under the MFA. (*Id.*, subd. (b).)

The Legislature amended the MFA in 1996, effective January 1, 1997. Client protections have been strengthened so that the provisions for notice, dismissal and stays now likewise apply to *any other proceeding* initiated by an attorney to resolve a fee dispute. Under the current scheme, an attorney must also give mandatory notice when he or she commences "any other proceeding against the client under a contract between attorney and client which provides for an alternative to arbitration under this article . . . ."[4] (§ 6201, subd. (a), as amended by Stats. 1996, ch. 1104, § 13.) Failure to give notice is a ground to dismiss other proceedings as well. And now the client can also invoke a stay of "any other proceeding" for fees commenced by the attorney. (*Ibid.*)

Arbitration under the MFA scheme is voluntary for a client and mandatory for an attorney if commenced by the client. (§ 6200, subd. (c).) Effective January 1, 1997, the voluntary aspect does not apply if "the client has agreed in writing to arbitration under this article of all disputes concerning fees, costs, or both . . . ." (*Ibid.*, as amended by Stats. 1996, ch. 1104, § 12.) Moreover, the MFA affords the client double protection, with a right to trial after arbitration: "The parties may agree in writing to be bound by the award of the arbitrators *at any time after the dispute over fees, costs, or both, has arisen.* In the absence of such an agreement, either party shall be entitled to a trial after arbitration."[5] (§ 6204, subd. (a), language in italics added by amendment, Stats. 1996, ch. 1104, § 16.) With the 1996 amendments the Legislature made it clear that prospective waivers of trial after arbitration are not allowed. Of course, this is a closed system and the binding arbitration agreed to in writing is the arbitration conducted by local bar association

---

[4]ASI's brief is misleading. ASI quotes the present MFA scheme without regard to the fact that Carey initiated the AAA procedure in May 1996. At that time notice to a client about the MFA was not required when the attorney was pursuing binding arbitration or some other alternative dispute resolution procedure.

[5]At oral argument, Carey insisted that an AAA arbitration proceeding would suffice as the "trial after arbitration" within the meaning of section 6204. In other words, once the MFA award has been rejected, an arbitration clause in an attorney-client fee agreement calling for AAA arbitration would kick in and supplant the trial de novo afforded by section 6204. This is a farfetched notion and of course the statute does not so provide. Indeed, section 6204 makes it clear that the trial is commenced by a court action and proceeds in accordance with provisions generally pertaining to civil actions. (§ 6204, subd. (c).)

*under the MFA,* not some other private alternative dispute resolution provided by another forum.

■ The main public policy informing the MFA "is to alleviate the disparity in bargaining power in attorney fee matters which favors the attorney by providing an effective, inexpensive remedy to a client which does not necessitate the hiring of a second attorney. [Citation.] The process favors the client in that [unless the client agrees in writing to arbitrate all fee disputes under the MFA] only the client can elect mandatory arbitration of a fee dispute; the attorney must submit the matter to arbitration if the client makes that election." (*Manatt, Phelps, Rothenberg & Tunney* v. *Lawrence* (1984) 151 Cal.App.3d 1165, 1174-1175 [199 Cal.Rptr. 246], bracketed insertion reflecting 1996 amendment to section 6200, subdivision (c).)

A formal advisory opinion of the Standing Committee on Professional Responsibility and Conduct of the State Bar treated the issue whether a binding arbitration agreement between client and attorney contravenes the letter or spirit of the MFA. (See Cal. Compendium on Prof. Responsibility, pt. IIA, State Bar Formal Opn. No. 1981-56.)[6] Although advisory only, the 1981 opinion generates analysis useful to this appeal.

The standing committee concluded that the MFA as it stood at the time was a consumer-oriented scheme. It emphasized that even if the client consents to arbitration, the client still has the right to judicial review. The committee went on to state that an agreement between an attorney and client calling for binding arbitration of a fee dispute that was executed *in advance* of the fee dispute would be contrary to the intent and spirit of the MFA. It was concerned that such an agreement "could be used as a precondition of employment and thus vitiate any probability of voluntary acquiescence." (Cal. Compendium on Prof. Responsibility, pt. IIA, State Bar Formal Opn. No. 1981-56, p. 3.) The committee reasoned that the structure of the MFA suggests that the commitment to be bound by arbitration could only be made *after* the fee dispute occurs "and the client has been made fully cognizant of the dual right to arbitrate and judicial review, including a trial de novo, should the client be dissatisfied with the arbitrator's decision . . . ." (*Ibid.*) Interestingly, as mentioned above, the 1996 amendments to the MFA resolve

---

[6]Carey has implied that a later ethics opinion disapproved of this opinion. It did, but only to the extent State Bar Formal Opinion No. 1981-56, published at California Compendium on Professional Responsibility, part IIA, questioned the earlier opinion, No. 1977-47. (See Cal. Compendium on Prof. Responsibility, pt. IIA, State Bar Formal Opn. No. 1989-116.) Both the earlier and later opinions dealt with the issue of the propriety of a retainer agreement provision calling for binding arbitration of *malpractice* claims. Neither the 1977 nor 1989 opinions spoke to the issue of arbitration of *fee* disputes and thus the substance of the 1981 opinion remains unchallenged.

this point by requiring that written waiver of the right to trial de novo must occur after the dispute arises. (§ 6204, subd. (a).)

We conclude that giving finality to the arbitrator's decision in this case would violate ASI's statutory rights under the MFA. At the pertinent time, the MFA was clear that arbitration under the scheme was voluntary for the client but mandatory for the attorney if initiated by the client. The arbitration initiated by the client could be advisory, with a right to trial de novo unless waived by written agreement. ASI did not waive its right to trial de novo *under the MFA* scheme by signing the fee agreement with the binding AAA arbitration clause. These protections were established to protect clients as consumers of legal services in general. This maxim of jurisprudence applies: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." (Civ. Code, § 3513.)

The MFA in effect at the time ASI invoked its protection preempted the AAA arbitration clause in the fee agreement. Therefore, the arbitrator exceeded his powers by purporting to render a binding award under authority of that preempted clause. (See *Board of Education* v. *Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 272, 287 [52 Cal.Rptr.2d 115, 914 P.2d 193] [statutory procedures for nonretention of probationary teachers preempts procedural protections in collective bargaining agreement and thus arbitrator exceeded his powers by granting relief pursuant to its terms].)

We reverse the judgment. ASI is entitled to a trial de novo. The parties will bear their own costs on appeal.

Hanlon, P. J., and Poché, J., concurred.