[No. S150371. Jan. 26, 2009.]

RICHARD A. SCHATZ, Plaintiff and Respondent, v.
ALLEN MATKINS LECK GAMBLE & MALLORY LLP, Defendant and
Appellant.

558

## COUNSEL

Howard Rice Nemerovski Canady Falk & Rabkin, Pamela Phillips, Ethan P. Schulman, Sean M. SeLegue, Jonas M. Nahoum; Rogers Joseph O'Donnell & Phillips and Zachary M. Radford for Defendant and Appellant.

Cooley Godward Kronish, Paul A. Renne and Charles M. Schaible for Nine Law Firms as Amici Curiae on behalf of Defendant and Appellant.

Joseph L. Schatz for Plaintiff and Respondent.

## OPINION

**MORENO, J.**—Under the mandatory fee arbitration act (MFAA; Bus. & Prof. Code, § 6200 et seq.),[1] when there is a fee dispute between an attorney and a client, the client may choose to submit the matter to arbitration by a local bar association. If the client elects such arbitration, the attorney must agree to arbitrate. The arbitration will be binding, however, only if the attorney and client so agree in writing after the dispute has arisen. Otherwise, either party may request a trial de novo within 30 days after the arbitration has concluded.

---

[1] All references are to this code unless otherwise indicated.

We consider in this case the relationship between arbitration under the MFAA, which authorizes a trial de novo, and a predispute contractual arbitration agreement entered into by an attorney and client pursuant to the California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.). In *Aguilar v. Lerner* (2004) 32 Cal.4th 974 [12 Cal.Rptr.3d 287, 88 P.3d 24] (*Aguilar*), as explained at greater length below, we determined that a client who had not chosen MFAA arbitration could not oppose a motion to compel contractual arbitration under the CAA by invoking the MFAA's right to a trial de novo, because in not choosing MFAA arbitration, the client had waived any rights he or she may have had under the MFAA. We left undecided the issue of whether a client who does choose MFAA arbitration may request a trial de novo after that arbitration has concluded, when to do so would defeat the attorney's motion to compel contractual arbitration under the CAA.

Although the majority of the court declined to reach this question in *Aguilar*, Justice Chin, joined by Justices Baxter and Brown, addressed the issue in a concurring opinion. Justice Chin concluded, for reasons discussed below, that the MFAA's right to a trial de novo was not intended to override a contractual obligation to arbitrate disputes pursuant to the CAA. He, therefore, would have disapproved of a Court of Appeal case that held to the contrary, *Alternative Systems, Inc. v. Carey* (1998) 67 Cal.App.4th 1034 [79 Cal.Rptr.2d 567] (*Alternative Systems*).

The Court of Appeal in the present case declined to follow Justice Chin's concurring opinion and held that the MFAA's right to a trial de novo after statutory arbitration defeats any contractual obligation to arbitrate attorney-client fee disputes. We granted review to resolve this issue.

We conclude that the Court of Appeal is incorrect. Although the language of the statute is not entirely free from ambiguity, construing the statute in light of the presumption against implied repeal leads to the conclusion that the MFAA does not limit the ability of attorneys and clients to enter into binding contractual arbitration. We reverse the judgment of the Court of Appeal.

## FACTUAL AND PROCEDURAL HISTORY

The essential facts, as quoted from the Court of Appeal opinion, are not in dispute. In a February 1999 agreement, Dr. [Richard A.] Schatz retained [the law firm of Allen Matkins Leck Gamble & Mallory (Allen Matkins)] to represent him in a dispute with [another doctor] concerning the assignment of income from a partnership. The agreement stated it would also apply to "any additional matters we handle on your behalf or at your direction." The agreement contained an arbitration section, which provided: "If you do not

agree to arbitrate disputes with us, simply line out this section. Arbitration is not a precondition to us representing you. By signing this letter without deleting this section, you agree that, in the event of any dispute arising out of or relating to this agreement, our relationship, or the services performed (including but not limited to disputes regarding attorneys' fees or costs . . . ), such dispute shall be resolved by submission to binding arbitration in San Diego County, California, before a retired judge or justice. . . ." Dr. Schatz signed the agreement without lining out the arbitration section.

In February 2000, without entering into another agreement, Dr. Schatz retained Allen Matkins to represent him in an easement dispute with a different party or parties affecting the rear access road to his Rancho Santa Fe home. Dr. Schatz paid Allen Matkins $179,088.69 in fees and costs incurred in the matter . . . . Allen Matkins proceeded to trial . . . , and in an April 2003 letter to Dr. Schatz, it demanded [an additional] $169,917.42 in outstanding fees and costs so "arbitration will not be necessary."

Dr. Schatz did not respond, and Allen Matkins apparently did nothing for some time. In a January 2004 letter to him, Allen Matkins invoked the arbitration clause of the agreement in the [previous partnership dispute] matter. In a written response, Dr. Schatz asserted his fee dispute concerned undisclosed conflicts of interest in the easement matter. Dr. Schatz claimed the agreement's arbitration provision [did not apply] because it did not refer to the easement litigation and its reference to additional matters was not highlighted or otherwise emphasized. Alternatively, Dr. Schatz claimed the arbitration provision was illegal under *Alternative Systems, supra*, 67 Cal.App.4th 1034. Dr. Schatz advised he wished to exercise his "statutory rights to nonbinding fee arbitration, and, if he so elects, trial de novo before a jury."

Allen Matkins advised Dr. Schatz it believed the arbitration provision applied, but it agreed to nonbinding arbitration under the MFAA through the San Diego County Bar Association (Bar Association). Allen Matkins provided Dr. Schatz with an application for the arbitration along with rules and instructions on the procedure. Allen Matkins requested that Dr. Schatz notify it within 10 days if he elected nonbinding arbitration.

At Dr. Schatz's insistence, Allen Matkins then provided him with a statutory "Notice of Client's Right to Arbitration." The notice provides a client has 30 days from the date of its receipt to apply for arbitration.

The matter was arbitrated in April 2005 through the Bar Association, and the following month the arbitrators ruled in favor of Allen Matkins.

Dr. Schatz then filed a complaint seeking a trial de novo, declaratory relief and refund of attorney fees. In response, Allen Matkins petitioned to compel binding arbitration under the preexisting agreement. In his opposition, Dr. Schatz argued that [the MFAA, as construed by the *Alternative Systems* court,] invalidate[d] the binding arbitration provision, and in reply, Allen Matkins argued that in *Aguilar* the Supreme Court impliedly abrogated the holding in *Alternative Systems*, and binding contractual arbitration would satisfy the MFAA's de novo trial requirement. The court agreed with Dr. Schatz and denied the petition to compel arbitration.

The Court of Appeal, for reasons discussed below, agreed with the trial court, and we granted Allen Matkins's petition for review.

DISCUSSION

A.  *Overview of the MFAA and CAA*

In *Aguilar*, we contrasted the MFAA and CAA arbitration schemes. "The CAA 'represents a comprehensive statutory scheme regulating private arbitration in this state. (§ 1280 et seq.) Through this detailed statutory scheme, the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' [Citation.] 'The statutes set forth procedures for the enforcement of agreements to arbitrate ([Code Civ. Proc.,] §§ 1281.2–1281.95), establish rules for the conduct of arbitration proceedings except as the parties otherwise agree (*id.*, §§ 1282–1284.2), describe the circumstances in which arbitrators' awards may be judicially vacated, corrected, confirmed, and enforced (*id.*, §§ 1285–1288.8), and specify where, when, and how court proceedings relating to arbitration matters shall occur (*id.*, §§ 1290–1294.2).' [Citation.] . . .

"By contrast, the MFAA constitutes a separate and distinct arbitration scheme. The MFAA was first proposed by the Board of Governors of the State Bar of California in 1976 when, finding that disputes concerning legal fees were the most serious problem between members of the bar and the public, the board sought to create a mechanism for arbitrating disputes over legal fees and costs. Recognizing the 'disparity in bargaining power in attorney fee matters which favors the attorney in dealings with infrequent consumers of legal services' (Hargarten & Ardisson, *Fine Tuning California's Mandatory Attorney Fee Arbitration Statute* (1982) 16 U.S.F. L.Rev. 411, 415), that many clients could not afford hiring additional counsel to litigate fee disputes in the civil courts (*ibid.*), and that previous schemes that called for voluntary arbitration were ineffective (*id.* at pp. 413–414), the Legislature

enacted the MFAA. The original legislation provided in pertinent part: 'The Board of Governors [of the State Bar of California] shall, by rule, establish, maintain, and administer a system and procedure for the arbitration of disputes concerning fees charged for professional services by members of the State Bar or by members of the Bar of other jurisdictions.' (Stats. 1978, ch. 719, § 1, p. 2249.) This mandate has been expanded to include mediation, but is otherwise unchanged today. (§ 6200, subd. (a).)

■ "In contrast to the CAA, which is governed by the Code of Civil Procedure, the MFAA has its own rules and limitations, as set forth in the Business and Professions Code. As one appellate court has described it, the MFAA 'is a closed system and the binding arbitration agreed to . . . is the arbitration conducted by [a] local bar association under the MFAA, not some other private alternative dispute resolution provided by another forum.' (*Alternative Systems*[, *supra*,] 67 Cal.App.4th [at pp.] 1042–1043 . . . .) The primary limitation of the MFAA is that it applies only to disputes concerning '[legal] fees, costs, or both' (§ 6200, subd. (a)) and is specifically inapplicable to '[c]laims for affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct' (*id.*, subd. (b)(2)). By contrast, virtually any civil dispute, including claims of legal malpractice, can be the subject of arbitration under the CAA. [Citations.] . . .

■ "The nature of the obligation to arbitrate under the MFAA differs from that under standard arbitration in two important ways. First, the obligation to arbitrate under the MFAA is based on a statutory directive and not the parties' agreement. Thus, a client may invoke the MFAA and proceed to arbitration despite the absence of any prior agreement to do so. By contrast, standard arbitration requires that both parties to a dispute agree to arbitrate. [Citation.]

"Second, section 6200, subdivision (c) provides: '[A]rbitration under this article shall be voluntary for a client and shall be mandatory for an attorney if commenced by a client.' In other words, whereas a client cannot be forced under the MFAA to arbitrate a dispute concerning legal fees, at the client's election an unwilling attorney can be forced to do so.

"The finality of an arbitration award under the MFAA also generally differs from an award rendered pursuant to standard arbitration under the CAA. Although parties choosing to resolve their dispute in standard arbitration pursuant to the CAA 'typically expect' that the arbitrator's decision will be final [citations], an award rendered pursuant to an arbitration under the MFAA is nonbinding, and either party may seek a trial de novo (§ 6204, subd. (a)). The MFAA, however, also provides that the parties may agree in writing that the arbitrator's award will be binding. (*Ibid.*)" (*Aguilar, supra*, 32 Cal.4th at pp. 983–985, italics omitted.)

■ The MFAA does not explicitly refer to CAA arbitration and the relationship between the two arbitration schemes is not immediately apparent. However, section 6201, subdivision (a) states: "The rules adopted by the board of governors shall provide that an attorney shall forward a written notice to the client prior to or at the time of service of summons or claim in an action against the client, or prior to or at the commencement *of any other proceeding against the client under a contract between attorney and client* which provides for an alternative to arbitration under this article, for recovery of fees, costs, or both." (Italics added.) The term "any other proceeding . . . under a contract between attorney and client," which was added by a 1996 amendment (Stats. 1996, ch. 1104, § 13, p. 7911), can be fairly inferred to include contractual arbitration under the CAA. (See *Aguilar, supra*, 32 Cal.4th at p. 991 (conc. opn. of Chin, J.).)

Section 6201, subdivision (b) further provides in pertinent part: "If an attorney, or the attorney's assignee, commences an action in any court *or any other proceeding* and the client is entitled to maintain arbitration under this article, . . . the client may stay the action *or other proceeding* by serving and filing a request for arbitration in accordance with the rules established by the board of governors pursuant to subdivision (a) of Section 6200." (Italics added.) Subdivision (c) provides in part: "Upon filing and service of the request for arbitration, the action *or other proceeding* shall be automatically stayed until the award of the arbitrators is issued or the arbitration is otherwise terminated. The stay may be vacated in whole or in part, after a hearing duly noticed by any party or the court, if and to the extent the court finds that the matter is not appropriate for arbitration under the provisions of this article. The action or other proceeding may thereafter proceed subject to the provisions of Section 6204."[2] (Italics added.)

Section 6204 in turn provides in subdivision (a) that "[t]he parties may agree in writing to be bound by the award of arbitrators appointed pursuant to this article at any time after the dispute over fees, costs, or both, has arisen. In the absence of such an agreement, either party shall be entitled to a trial after arbitration if sought within 30 days, pursuant to subdivisions (b) and (c)," with one exception not relevant here. Subdivision (b) provides in pertinent part: "If there is an action pending, the trial after arbitration shall be initiated by filing a rejection of arbitration award and request for trial after arbitration in that action within 30 days after mailing of notice of the award." Subdivision (c) provides: "If no action is pending, the trial after arbitration shall be initiated by the commencement of an action in the court having jurisdiction over the amount of money in controversy within 30 days after mailing of notice of the award. After the filing of such an action, the action

---

[2] The italicized language was also added by the 1996 amendment. (Stats. 1996, ch. 1104, § 13, p. 7911.)

shall proceed in accordance with the provisions of Part 2 (commencing with Section 307) of the Code of Civil Procedure, concerning civil actions generally."

### B. Alternative Systems, Aguilar, *and the Court of Appeal Opinion*

Two cases are critical to understanding the Court of Appeal's holding in the present case. In *Alternative Systems, supra*, 67 Cal.App.4th 1034, a fee dispute arose related to a 1995 contract calling for binding arbitration governed by the American Arbitration Association (AAA). The attorney invoked the binding arbitration clause, but the client demanded arbitration under the MFAA, and after the arbitration, timely rejected the arbitration award and requested a trial. It then sought unsuccessfully to stay the AAA arbitration and made a special appearance at that arbitration to challenge the arbitrator's jurisdiction. The arbitrator rendered an award in favor of the attorney, and the client moved to vacate the award on the grounds that contractual arbitration was "preempted" by the MFAA with its right to trial de novo. The trial court denied the motion.

The Court of Appeal reversed. The court noted that "[t]he Legislature amended the MFA[A] in 1996, effective January 1, 1997. Client protections have been strengthened so that the provisions for notice, dismissal and stays now likewise apply to *any other proceeding* initiated by an attorney to resolve a fee dispute. Under the current scheme, an attorney must also give mandatory notice when he or she commences 'any other proceeding against the client under a contract between attorney and client which provides for an alternative to arbitration under this article . . . .' (§ 6201, subd. (a), as amended by Stats. 1996, ch. 1104, § 13.) Failure to give notice is a ground to dismiss other proceedings as well. And now the client can also invoke a stay of 'any other proceeding' for fees commenced by the attorney. (*Ibid.*)" (*Alternative Systems, supra*, 67 Cal.App.4th at p. 1042, fn. omitted.)

The court observed that "[t]he main public policy informing the MFA[A] 'is to alleviate the disparity in bargaining power in attorney fee matters which favors the attorney by providing an effective, inexpensive remedy to a client which does not necessitate the hiring of a second attorney. [Citation.] The process favors the client in that [unless the client agrees in writing to arbitrate all fee disputes under the MFA[A]] only the client can elect mandatory arbitration of a fee dispute; the attorney must submit the matter to arbitration if the client makes that election.' [Citation.]" (*Alternative Systems, supra*, 67 Cal.App.4th at p. 1043.) The court also noted that a formal advisory opinion of the Standing Committee on Professional Responsibility and Conduct of the State Bar had concluded that a binding arbitration agreement between client and attorney "contravenes the letter or spirit of the MFA[A]," essentially

because the statute is "a consumer-oriented scheme" in which "the commitment to be bound by arbitration" would appear to follow only after the client has been made aware of the right to judicial review after an MFAA arbitration. (*Ibid.*, quoting Cal. Compendium on Prof. Responsibility, pt. IIA, State Bar Formal Opn. No. 1981-56, p. 3.) The court went on to note that "the 1996 amendments to the MFA[A] resolve this point by requiring that written waiver of the right to trial de novo must occur after the dispute arises. (§ 6204, subd. (a).)" (*Alternative Systems*, at pp. 1043–1044.)

The court also rejected the attorney's argument that "an AAA arbitration proceeding would suffice as the 'trial after arbitration' within the meaning of section 6204. . . . This is a farfetched notion and of course the statute does not so provide. Indeed, section 6204 makes it clear that the trial is commenced by a court action and proceeds in accordance with provisions generally pertaining to civil actions. (§ 6204, subd. (c).)" (*Alternative Systems, supra*, 67 Cal.App.4th at p. 1042, fn. 5.)

In *Aguilar, supra*, 32 Cal.4th 974, a dispute arose between an attorney and client, with the latter suing the former for malpractice. In filing such an action, the client waived his right to arbitrate the fee dispute under the MFAA. (§ 6201, subd. (d).) The attorney moved to compel binding arbitration pursuant to the CAA and added a claim for unpaid attorneys fees and costs. (*Aguilar, supra*, 32 Cal.4th at pp. 980–981.) The client contended that under the MFAA, arbitration was optional for the client and could not be compelled, and that therefore the motion to compel should not be granted. Like the lower courts, we concluded that the client may not defeat a motion to compel, because in waiving his right to an MFAA arbitration, he waived all rights that a client may have under the MFAA scheme. (32 Cal.4th at pp. 989–990.) The court expressly declined to decide whether the client could have defeated the motion to compel arbitration at the conclusion of the MFAA arbitration if the client had not waived his MFAA arbitration rights. (32 Cal.4th at p. 989, fn. 6.)

Justice Chin, in a concurring opinion joined by Justices Baxter and Brown, addressed that precise issue. Justice Chin drew a very different lesson from the 1996 amendments discussed above than had the *Alternative Systems* court. He quoted section 6201, subdivision (a), as amended in 1996, which requires an attorney to inform the client of the client's right to arbitration under the MFAA " 'prior to or at the time of service of summons or claim in an action against the client, or prior to *or at the commencement of any other proceeding against the client under a contract between attorney and client which provides for an alternative to arbitration under this article* . . . .' " (*Aguilar, supra*, 32 Cal.4th 974, 991 (conc. opn. of Chin, J.).) Justice Chin then stated: "The italicized language acknowledges that the parties may agree

to some proceeding to resolve the controversy other than a judicial action, such as binding arbitration under the CAA. The same section goes on to provide that if an attorney 'commences an action in any court *or any other proceeding* . . . , the client may *stay* the action *or other proceeding*' by requesting arbitration under the MFAA, which must be done 'prior to the filing of an answer in the action *or equivalent response in the other proceeding* . . . .' (§ 6201, subd. (b), italics added.) If the client does request nonbinding arbitration, 'the action *or other proceeding* shall be automatically *stayed until* the award of the arbitrators is issued or the arbitration is otherwise terminated.' (§ 6201, subd. (c), italics added.) This means that if the client requests nonbinding arbitration under the MFAA, the judicial action *or other proceeding* is *stayed,* but only *until* the nonbinding arbitration is finished. The other proceeding is merely stayed pending the nonbinding arbitration, not dismissed permanently." (*Ibid.*)

Justice Chin acknowledged that "[i]n some respects, the MFAA statutory language is not entirely clear. Section 6201, subdivision (c), also states that a court may vacate the stay if it finds the matter not appropriate for nonbinding arbitration under the MFAA, and that '[t]he action or other proceeding may thereafter proceed subject to the provisions of Section 6204.' Section 6204, in turn, provides that the parties to the nonbinding arbitration may agree to be bound by the arbitrators' award, but, as it reads today, only *after* the controversy has arisen. It also states that if there is no such agreement, 'either party shall be entitled to a *trial* after arbitration if sought within 30 days . . . .' (§ 6204, subd. (a), italics added.) The statute goes on to provide how 'the trial after arbitration shall be initiated' both when an action is already pending and when no action is pending. (§ 6204, subds. (b) & (c).) In the latter situation, 'the trial after arbitration shall be initiated by the commencement *of an action in the court* having jurisdiction over the amount of money in controversy . . . .' (§ 6204, subd. (c), italics added.)" (*Aguilar, supra,* 32 Cal.4th at pp. 991–992 (conc. opn. of Chin, J.).)

Yet Justice Chin rejected the inference the *Alternative Systems* court drew from this language that the client's right to trial de novo trumps contractual obligations under binding arbitration. "Although this reading of section 6204 is plausible if the section is viewed in isolation, the section does not exist in isolation but is part of the MFAA, which includes section 6201. It is 'a cardinal rule of statutory construction, that "every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." ' [Citation.] The references to a trial and court action in section 6204 do not negate section 6201. In context, and in order to give effect to section 6201, section 6204 must be construed as merely providing the procedure to follow *if* the nonbinding arbitration is followed by a judicial action, not as prohibiting the parties from agreeing to some *other proceeding.* The latter interpretation would make meaningless section 6201's

acknowledgment that the parties may agree to some form of dispute resolution other than judicial action, and its repeated references to some proceeding other than a court action." (*Aguilar, supra*, 32 Cal.4th at p. 992 (conc. opn. of Chin, J.).)

Justice Chin also rejected *Alternative Systems* because of what he viewed as the illogical consequences of the decision. "We are holding today that a client who does not request nonbinding arbitration has waived the MFAA's protections, and the binding arbitration agreement is enforceable. If *Alternative Systems* were to remain valid, that would mean that a client who agreed to binding arbitration could evade that agreement simply by requesting nonbinding arbitration. The lesson future clients who had agreed to binding arbitration would learn from this case is that if they want to evade their agreement, they must demand nonbinding arbitration whether or not they otherwise want it. Future clients who wish to sue in court despite an arbitration agreement will be forced to go to nonbinding arbitration before they could do so. This situation would be unfortunate for two reasons. First, it would permit a client to evade an arbitration agreement by a simple procedural device, contrary to the letter and intent of the CAA. Second, it would require, as a prerequisite to evading the arbitration agreement, that the client pursue nonbinding arbitration. This would result in many sham nonbinding arbitrations that neither party wanted or intended to accept." (*Aguilar, supra*, 32 Cal.4th at pp. 992–993 (conc. opn. of Chin, J.).)

Justice Chin concluded: "We cannot reasonably conclude that the Legislature created a system whereby clients who agree to binding arbitration may evade that agreement, but only if they go through the charade of demanding and obtaining a nonbinding arbitration that they may not want," and would violate our policy of giving effect where possible to arbitration agreements. (*Aguilar, supra*, 32 Cal.4th at p. 993 (conc. opn. of Chin, J.).)

The Court of Appeal in the present case disagreed with the analysis in Justice Chin's concurring opinion. Noting Justice Chin's observation that the statutory language was ambiguous, the court looked to the legislative history. After citing various items of legislative history showing that the original legislation was consumer oriented, the court stated: "Given the Legislature's intent, we resolve any tension between sections 6201 and 6204 in favor of upholding client protections under the MFAA. Under Justice Chin's analysis, section 6204's right to trial de novo is rendered meaningless for clients who signed retainer agreements with binding arbitration clauses before any fee dispute arose. Since the Legislature sought to rectify disparities in bargaining power between clients and attorneys that favor attorneys, and to foster clients' trust in the legal system, we do not believe it intended to deny the trial de novo protection to a large percentage of clients. . . . [¶] In line with

*Alternative Systems*, we conclude section 6204, as amended in 1996, gives clients the right to trial de novo after nonbinding arbitration under the MFAA even when they have signed prospective waivers of trial after arbitration. In such situations the MFAA trumps the CAA."

### C. Statutory Language

■  In construing a statute "[o]ur task is to discern the Legislature's intent. The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190 [48 Cal.Rptr.3d 108, 141 P.3d 225].)

Here we must construe the meaning of sections 6201 and 6204 and the interplay between them. The former section, adopted in 1976, has always provided that, if the client invoked its MFAA rights, any pending fee litigation would be automatically stayed. However, as noted above, the 1996 amendments recognized that, by the time an attorney-client fee dispute arises, the parties may have signed an agreement to forgo court litigation, and to resolve such matters by "proceeding[s]" of another kind. (§ 6201, subd. (a).) Hence, the statute now includes such "other proceedings" in its automatic stay provisions. (*Id.*, subds. (b), (c).)

However, the statute makes clear that, once the MFAA arbitration process is validly completed or terminated, leaving one or both parties dissatisfied, "[t]he action or other proceeding may thereafter proceed subject [only] to the provisions of Section 6204." (§ 6201, subd. (c), italics added.) This "or other proceeding" reference, also added in 1996, is a strong indication that, unless section 6204 clearly provides otherwise, binding arbitration, pursuant to a preexisting agreement, may go forward once the MFAA arbitration process is over.

■  Schatz argues in effect that subdivision (a) of section 6204 provides a clear indication that the binding arbitration is disallowed. We disagree. As noted, that section provides that "[t]he parties may agree in writing to be bound by the award of arbitrators appointed pursuant to this article at any time after the dispute over fees, costs, or both, has arisen. In the absence of

such an agreement, either party shall be entitled to a trial after arbitration if sought within 30 days, pursuant to subdivisions (b) and (c)." But the import of that section is merely that the parties may agree, after the fee dispute has arisen, to give the MFAA arbitration process binding effect, thus foreclosing any right of a dissatisfied party to carry the case further by any means. On the other hand, the subdivision makes clear, if there is no such agreement, the MFAA arbitration will be *nonbinding*, and a party dissatisfied with the result may carry on with the dispute.

Thus, the focus of section 6204, subdivision (a) is how the parties may confer *binding* effect upon an *MFAA* arbitration, and may thus forestall any and all post-MFAA proceedings that one or the other of the parties might otherwise invoke. The subdivision does not purport to speak to whether the parties to a *nonbinding* MFAA arbitration may otherwise agree, or have agreed, on how to resolve the case if the MFAA arbitration leaves one or both parties dissatisfied. The subdivision does not foreclose the possibility that, under a general agreement between the parties, the *nonbinding* MFAA process should be followed by *binding* arbitration, rather than by a lawsuit.

■ As it has since its inception, subdivision (a) of section 6204 does state that "[i]n the absence of [a postdispute] agreement" to make the MFAA arbitration binding, the dissatisfied party is entitled to a trial. But in context, this language appears to be simply designed to ensure that unless the parties agree to be bound by the MFAA arbitration, and thus to end the dispute then and there, the case may, following MFAA arbitration, proceed by normal means. As subdivisions (a) and (c) of section 6201 suggest, those normal means may include not only court litigation, but "other proceedings" such as binding arbitration pursuant to a predispute agreement between the parties.

Furthermore, while the MFAA provides that "either party shall be entitled to a trial after [MFAA] arbitration" (§ 6204, subd. (a)), the right granted is simply to a trial in accordance with applicable law. The MFAA confers no immunity from valid defenses, such as the existence of a contractual obligation to arbitrate. This is clear from section 6204, subdivision (c), which provides that "the action shall proceed in accordance with the provisions of Part 2 (commencing with Section 307) of the Code of Civil Procedure, concerning civil actions generally." (§ 6204, subd. (c), italics added.) Included in part 2 are the laws providing for demurrers (Code Civ. Proc., § 430.10 et seq.) and motions for summary judgment (*id.*, § 437c). Either a demurrer or a motion for summary judgment offers an appropriate procedural vehicle, in addition to a motion to compel arbitration (*id.*, § 1281.2), for pointing out to the court that the plaintiff has no right to sue because he or she has agreed to arbitrate. (*Charles J. Rounds Co. v. Joint Council of Teamsters No. 42* (1971) 4 Cal.3d 888, 899 [95 Cal.Rptr. 53, 484 P.2d 1397].)

Therefore, a person who has agreed in writing to arbitrate a dispute, the right to "a trial for" (§ 6204, subd. (a)) granted in the MFAA would appear to be subject to a demurrer or summary judgment motion designed to compel contractual arbitration.

### D. Did the MFAA Impliedly Repeal the CAA

Moreover, to the extent there is ambiguity in the statute, because section 6201 provides implicitly that CAA arbitration may be stayed and proceed subject to section 6204, but section 6204 refers only to "trial" after MFAA arbitration, that ambiguity must viewed in light of the presumption against implied repeal.

■ When one subsequently enacted statute limits the scope of an earlier statute, such limitation is designated a partial repeal. (See *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 569 [71 Cal.Rptr.2d 731, 950 P.2d 1086].) Schatz is essentially arguing that the MFAA partially repealed the earlier enacted CAA by limiting its operation for those who have undergone an MFAA arbitration. In addressing this argument, we first note the MFAA does not repeal the CAA expressly. Although the MFAA refers to an "other proceeding," which Allen Matkins agrees encompasses a proceeding under the CAA, section 6204 does not mention the CAA. It would have been very easy for the Legislature, had that been its intent, to state in section 6204 or elsewhere in the MFAA that the arbitration it creates is to the exclusion of any other arbitration. But it did not do so.

■ Turning to the question of whether the MFAA impliedly repealed the CAA, we first note that " ' "[a]ll presumptions are against a repeal by implication. [Citations.]" [Citation.] Absent an express declaration of legislative intent, we will find an implied repeal "only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " [Citation.]' " (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 487 [110 Cal.Rptr.2d 370, 28 P.3d 116].) "Because the 'doctrine of implied repeal provides that the most recently enacted statute expresses the will of the Legislature' [citation], application of the doctrine is appropriate in those limited situations where it is necessary to effectuate the intent of drafters of the newly enacted statute. ' "In order for the second law to repeal or supersede the first, the former must constitute a revision of the *entire subject*, so that the court may say that it was intended to be a substitute for the first." ' " (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1038 [56 Cal.Rptr.3d 814, 155 P.3d 226], italics added.) Courts "will infer the repeal of a statute only when . . . a subsequent act of the legislature clearly is intended to occupy the

entire field covered by a prior enactment." (Sutherland, Statutes and Statutory Construction (6th ed. 2002) § 23.9, p. 461, also quoted in *Professional Engineers, supra,* at p. 1038.) " ' " 'The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together.' " ' " (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra,* 17 Cal.4th at p. 569.)

■ When this standard is applied, it is evident the MFAA did not impliedly repeal the CAA. The two statutory schemes do not even govern the same subject. The MFAA concerns nonbinding arbitration that the parties did not agree to in advance, while the CAA concerns binding arbitration agreed to in advance. Furthermore, the two statutes may be rationally harmonized. As Justice Chin explained in his concurring opinion in *Aguilar,* "Nothing in the MFAA makes [a binding] arbitration agreement . . . unenforceable. The MFAA and the CAA create two very different types of arbitration. . . . Both may be given effect. Clients may, if they wish, request and obtain nonbinding arbitration under the MFAA. That arbitration may, and often will, resolve the dispute. But if the client does not request nonbinding arbitration, or if it is held but does not resolve the dispute, then the MFAA has played its role, and the matter would continue without it. Either party may then pursue judicial action unless the parties had agreed to binding arbitration. In that event, the CAA would apply, and the dispute would go to binding arbitration. This conclusion is consistent with the statutory language of both the MFAA and the CAA and the strong public policy in favor of binding arbitration as a means of resolving disputes." (*Aguilar, supra,* 32 Cal.4th at p. 991 (conc. opn. of Chin, J.), fn. omitted.)

Schatz cites in support of his position *Alternative Systems, supra,* 67 Cal.App.4th at pages 1043–1044, which notes that "the 1996 amendments to the MFA[A] . . . requir[ed] that written waiver of the right to trial de novo must occur after the dispute arises. (§ 6204, subd. (a).)" The statutory language to which the *Alternative Systems* court referred is that "[t]he parties may agree in writing to be bound by the award of arbitrators at any time after the dispute over fees, costs, or both, has arisen." (§ 6204, former subd. (a), as amended by Stats. 1996, ch. 1104, § 16, p. 7914.) But whatever that statute may have meant in 1996, it was amended in 1998 to add the phrase "appointed pursuant to this article" to the first sentence of section 6204, subdivision (a), so that sentence read, and now reads, with the 1998 language in italics: "The parties may agree in writing to be bound by the award of arbitrators *appointed pursuant to this article* at any time after the dispute over fees, costs, or both, has arisen." (Stats. 1998, ch. 798, § 1.) By limiting its application to arbitration under the MFAA, the Legislature impliedly recognized other possible forms of arbitration, thereby indicating that the MFAA and CAA may stand together.

Construing the MFAA to impliedly repeal the CAA would not only be contrary to the policies *in favor of* enforcing agreements to arbitrate and *against* finding implied repeal, it would also create two anomalies that the Legislature cannot have intended. One anomaly is identified in Justice Chin's concurring opinion in *Aguilar, supra*, 32 Cal.4th at pages 992–993. A client would be permitted to evade its agreement to arbitrate, but *only* if it demands and goes through with nonbinding arbitration under the MFAA. Thus, a client that wanted no arbitration of any kind, but especially did not want binding arbitration, would have to go through the charade of demanding and obtaining nonbinding arbitration under the MFAA before it could go to trial.

The second anomaly arises from the fact that both parties agreed to binding arbitration. Because only the client may invoke nonbinding arbitration under the MFAA, attorneys could not unilaterally evade their agreement to arbitrate. But attorneys, like clients, could do so if the client requested nonbinding arbitration under the MFAA. Thus, a client that wished first to obtain what might be particularly quick and cheap nonbinding arbitration under the MFAA, but that also wanted to obtain the relatively inexpensive binding arbitration to which the parties agreed if the MFAA arbitration failed to resolve the dispute, might hesitate to demand nonbinding arbitration, opening itself up to the risks of a trial de novo. It would be illogical, and contrary to the purpose behind both the MFAA and the CAA, for the Legislature to permit attorneys to evade their agreement to arbitrate if, but only if, the client invokes the MFAA. Yet that is what would occur under the position Schatz advocates.[3]

In short, an adoption of Schatz's position of implied repeal would result in a statutory scheme that is quite illogical. Giving effect to both the MFAA and the CAA, on the other hand would be consistent with the distinct purposes behind both of those statutory schemes.

For all of the above reasons, we conclude that the MFAA does not stand as an obstacle to the enforcement of a valid agreement to arbitrate pursuant to the CAA.[4]

---

[3] The Court of Appeal relied on the legislative history of the MFAA to emphasize that it was intended to be a consumer-oriented piece of legislation designed to address disparities in bargaining power between attorneys and clients. While this is no doubt true (*Aguilar, supra*, 32 Cal.4th at p. 983), it does not follow that the Legislature considered an implied repeal of the CAA to be part of the MFAA's pro-consumer initiative. Nothing in the legislative history we have reviewed conclusively reveals an intent to limit the operation of the CAA other than to permit the parties to temporarily stay its proceeding for purposes of engaging in MFAA arbitration.

[4] Schatz also argues that his agreement for contractual arbitration applied only to his engagement of Allen Matkins in the 1999 partnership dispute and not the 2000 easement dispute from which the present fee dispute arises. Moreover, he contends that for various

## DISPOSITION

The judgment of the Court of Appeal is reversed and the case is remanded for proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.

On March 11, 2009, the opinion was modified to read as printed above.

---

reasons Allen Matkins is estopped from compelling contractual arbitration. These issues were raised in the Court of Appeal but the court did not address them because of its conclusion that contractual arbitration was categorically unavailable. The Court of Appeal is to address these issues on remand.