Filed 1/24/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | H046917<br>(Santa Clara County<br>Super. Ct. No. JD024706) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY & CHILDREN'S SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.M.,<br><br>Defendant and Appellant. | |

Due to a brain injury suffered as an infant, nine-year-old J.M. has extraordinary physical needs. In this dependency action, J.M. challenges the juvenile court's permanent plan of legal guardianship with continued dependency jurisdiction. He argues the appointment of his grandmother as legal guardian is not authorized by the governing statute, his grandmother is not a suitable guardian, and the guardianship is not in his best interest. Finding no error in the guardianship appointment, we will affirm the placement order.

## I. BACKGROUND

J.M. was born in 2010. He suffered an accident at home when he was 10 months old, which rendered him permanently disabled. Since the accident J.M. has resided at the Children's Hospital of Northern California, a rehabilitation facility formerly operated as The Children's Recovery Center of Northern California. He suffers from anoxic brain

injury, epilepsy, developmental delays, and bone disorders. He has gastrostomy and tracheal tubes to help him eat and breathe, and he will need them indefinitely. He is immobile, will never walk, and is fully dependent on others for care. He is nonverbal, but oriented to those with whom he interacts, communicating through eye gazes and facial expressions. J.M. has an individualized education plan, and he attends elementary school in a tilt-in-space wheel chair accompanied by a medical aide. He is a client of the San Andreas Regional Center, a facility designated to "assist persons with developmental disabilities and their families in securing those services and supports which maximize opportunities and choices for living, working, learning, and recreating in the community" (Welf. & Inst. Code, § 4640.7, subd. (a)), and he is eligible for the center's services for life.

J.M. came to the attention of the Santa Clara County Department of Family and Children's Services (the Department) in 2017 when the children's hospital declared him medically cleared for discharge, provided that two adults be trained as caregivers. Neither parent had completed the necessary training. J.M.'s father had never visited him, and his mother's visits were infrequent. J.M. was taken into protective custody while continuing to reside at the hospital, and the Department filed a petition alleging that he was subject to the juvenile court's jurisdiction because his parents were unwilling and/or unable to care for him upon discharge, and that both parents had a history of substance abuse. (Welf. & Inst. Code, § 300, subds. (b)(1), (g).) The petition was sustained and J.M. was declared a dependent of the court. Family reunification services were ordered for both parents, but neither embraced reunification, services were terminated, and the matter was set for a hearing under Welfare and Institutions Code section 366.26 to select a permanent plan for J.M.

The Department assessed J.M. as "not adoptable" due to his complex specialized needs. The Department recommended a permanent plan of legal guardianship with J.M.'s maternal grandmother, who visited J.M. regularly and with whom J.M. had formed

2

a positive emotional bond. J.M.'s two siblings, close to him in age, were also in the grandmother's care, and she was committed to maintaining the sibling relationships. The social worker's report stated that J.M.'s grandmother sought legal guardianship because she understood her grandson's specialized care requirements and his emotional need for a familial connection—a need that her daughter (J.M.'s mother), who struggled with sobriety, was unable to meet. The grandmother understood the responsibilities of a legal guardianship; she was committed to overseeing J.M.'s care and providing the "continuous emotional support and the family connection that the department and/or any other institution are not able to afford him." An addendum report explained that the Department had been unable to find a qualified placement for J.M. because of his need for subacute care, and the regional center had reached out to care facilities in Stanislaus County (mother and grandmother moved to Modesto in 2017) which were either full or accepting only adult referrals.

At a contested hearing to determine J.M.'s permanent plan, the juvenile court admitted in evidence the social worker's reports and the following stipulations: J.M. had resided at the children's hospital since December 1, 2010; J.M. was cleared for discharge from the hospital; grandmother completed some but not all of the training to care for J.M.; grandmother did not reside in accessible housing and had no plans to obtain accessible housing; and grandmother was not seeking placement of J.M. in her home. J.M. opposed the Department's proposed permanency plan, arguing that the juvenile court lacked statutory authority to appoint grandmother as legal guardian without him being in her physical custody, and that the plan was not in his best interest because it would relieve the Department of any obligation to find a less restrictive placement, thus "functionally committing [J.M.] to indefinite institutional care."

The juvenile court adopted the Department's recommendation. It found that the permanent plan of legal guardianship was statutorily authorized and in J.M.'s best interest due to his unusual needs. It appointed grandmother as legal guardian, continued

3

dependency jurisdiction with 2028 as the anticipated termination date, and placed J.M. in the care, custody, and control of grandmother under the supervision of the Department. The court asked the Department to continue to look for a more permanent placement for J.M., and it set a six-month post permanency review hearing.

## II. DISCUSSION

Welfare and Institutions Code section 366.26 governs a juvenile court's selection of a permanent plan for a dependent child when the child cannot be reunited with his or her parents. (Undesignated subdivision and paragraph references are to this code section.) Subdivision (b) requires that the placement decision be made according to the following order of preference: adoption; legal guardianship to a relative with whom the dependent child is living; legal guardianship to a non-relative; permanent placement with a fit and willing relative; and foster care. (Subd. (b)(1)–(7).) In choosing among the options, the juvenile court is directed to "proceed pursuant to subdivision (c)." (Subd. (b).) Under paragraph (1) of subdivision (c), the juvenile court first determines whether the child is likely to be adopted. If so, paragraph (c)(1) directs the court to terminate parental rights and order the child placed for adoption. (Subd. (c)(1).) Subdivision (c) also provides exceptions to terminating parental rights. One of those exceptions applies when the court finds that terminating parental rights would be detrimental to the child in circumstances including when "[t]he child is placed in a residential treatment facility, adoption is unlikely or undesirable, and continuation of parental rights will not prevent finding the child a permanent family placement if the parents cannot resume custody when residential care is no longer needed." (Subd. (c)(1)(B)(iii).) Paragraph (2) of subdivision (c) provides an exception to terminating parental rights when the child welfare agency has failed in its statutory duties to facilitate reunification. (Subd. (c)(2)(A).) Under paragraph (3) of subdivision (c), a permanent placement goal of adoption is ordered without terminating parental rights

4

when placement for adoption is deemed difficult for specified reasons and not terminating parental rights creates no detriment to the child. (Subd. (c)(3).)

Subparagraph (c)(4)(A), invoked by the juvenile court here, applies "[i]f the court finds that adoption of the child or termination of parental rights is not in the best interest of the child, because one of the conditions in clause (i), (ii), (iii), (iv), (v), or (vi) of subparagraph (B) of paragraph (1) or in paragraph (2) applies." (Subd. (c)(4)(A).) The triggering clause here is subparagraph (c)(1)(B)(iii), which requires that the child be residing in a treatment facility. Under any of those circumstances, the court is directed to order that "the present caretaker or other appropriate person" become the child's legal guardian. (*Ibid*.) The provision further instructs the juvenile court to consider legal guardianship "before continuing the child in foster care under any other permanent plan if it is in the best interest of the child and if a suitable guardian can be found." (*Ibid*.)[1]

## A. SUBPARAGRAPH (C)(4)(A) APPLIES EVEN WHEN ADOPTION IS UNLIKELY

J.M. argues that the juvenile court lacked authority to select a permanent plan of legal guardianship under subparagraph (c)(4)(A) because that provision does not apply unless the court has made a finding that there is a likelihood of adoption. The argument poses a question of statutory interpretation subject to our independent review. (*In re M.C.* (2011) 199 Cal.App.4th 784, 804.) Our focus when construing a statute is to determine and give effect to the intent of the Legislature. "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent." (*People v. King* (2006) 38 Cal.4th 617, 622.) " 'If the words

---

[1] Subparagraph (c)(4)(B) provides alternative permanent placements in other unusual circumstances. Subparagraph (c)(4)(B)(i) provides a placement plan where a child is bonded and living with a relative who is willing to provide a permanent home but not willing to become a legal guardian; subparagraph (4)(B)(ii) provides a placement plan where a child is living with a nonrelative caregiver who is willing to provide a permanent home but not willing to become a legal guardian; and subparagraph (4)(B)(iii) provides a placement plan where a child is living in a group home or short-term residential treatment.

themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.' " (*Schatz v. Allen Matkin* (2009) 45 Cal.4th 557, 571.) But a statute " 'should not be given a literal meaning if to do so would create unintended, absurd consequences.  Instead, "intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment." ' " (*In re Lana S*. (2012) 207 Cal.App.4th 94, 108.)  Ultimately, the court "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and it must avoid an interpretation [leading] to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246.)

J.M. contends subparagraph (c)(4)(A)'s conditional clause—"If the court finds that adoption of the child or termination of parental rights is not in the best interest of the child, because one of the conditions in clause (i), (ii), (iii), (iv), (v), or (vi) … applies"— clearly and unambiguously invokes the statutory exceptions to adoption, which are only triggered if the child is first found likely to be adopted.  He argues that the phrase "not in the best interest of the child" in subparagraph (c)(4)(A) is synonymous with the phrase "detrimental to the child" in subparagraph (c)(1)(B).  According to J.M., subparagraph (c)(4)(A) would apply only if the court makes the threshold finding under paragraph (c)(1) "that it is likely the child will be adopted," followed by a detriment finding under subparagraph (c)(1)(B) exempting the child from adoption, which did not occur here.  The language and structure of paragraph (c) do not support J.M.'s narrow reading of the statute for several reasons.

Application of subparagraph (c)(4)(A) does not plainly and unambiguously hinge on a finding under paragraph (c)(1) that a child is adoptable.  The plain language of subparagraph (c)(4)(A) makes no mention of whether a child is likely to be adopted.  Subparagraph (c)(4)(A) instructs the juvenile court to order a present caretaker or other appropriate person to be the child's legal guardian if the court finds that adoption or

6

termination of parental rights is not in the best interest of the child "because of" certain qualifying conditions.  (Subd. (c)(4)(A).)

Had the Legislature intended to exclude from subparagraph (c)(4)(A) children who are not likely to be adopted, it could have limited that guardianship alternative to circumstances where "the court finds that termination of parental rights would be detrimental to the child pursuant to paragraph (1)."  Indeed, the Legislature used such language in paragraph (c)(3), where the juvenile court is to identify adoption as the permanent placement goal without terminating parental rights (as opposed to a permanent adoption plan in which parental rights are terminated) if "the court finds that termination of parental rights would not be detrimental to the child pursuant to paragraph (1)."  (Subd. (c)(3).)  A detriment inquiry is necessary to the permanent placement goal described in paragraph (c)(3), and the Legislature's choice of words and specific reference to paragraph (c)(1) make that clear.  In contrast, the Legislature chose different words directed not to the detriment inquiry required by paragraph (c)(1) but rather to the *conditions* described in each clause under subparagraph (c)(1)(B) ("because one of the conditions in clause (i), (ii), (iii), (iv), (v), or (vi) … applies") to trigger the alternative of appointing a "caretaker[]" or an "appropriate person[]" as a legal guardian under subparagraph (c)(4)(A).  That word choice signals to us that the Legislature did not intend to limit the alternative placement to children who were deemed likely to be adopted but were excepted from adoption.

One of the criteria included in subparagraph (c)(1)(B)(iii) is that "adoption is unlikely or undesirable."  That inquiry separates the condition from the detriment inquiry under paragraph (c)(1).  Indeed, if a child is likely to be adopted under paragraph (c)(1), it would be nonsensical to then inquire whether adoption is unlikely.  Our interpretation that subparagraph (c)(4)(A)'s invocation of subparagraph (c)(1)(B)'s clauses is independent from a detriment inquiry under paragraph (c)(1) gives meaning to subparagraph (c)(1)(B)(iii) and avoids rendering the phrase "adoption is unlikely or

7

undesirable" a nullity. (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 357 ["An interpretation that renders statutory language a nullity is obviously to be avoided"].)

The Legislature's inclusion of guardianship among other alternatives to the preferences set forth in subdivision (b) that are *not* contingent on the likelihood of adoption referenced in paragraph (c)(1) also supports our conclusion that the guardianship alternative may be selected without determining that a child is likely to be adopted. Subparagraph (c)(4)(A) instructs the juvenile court to consider a legal guardianship before a permanent plan involving continued foster case, and that inquiry also does not differentiate between children who are not likely to be adopted versus those who are exempt from adoption. And subparagraph (c)(4)(B) addresses placement alternatives without distinguishing the reasons adoption is not selected.[2] Nor does paragraph (c)(3) contemplate a likelihood finding. The relevant inquiry in that paragraph is whether the child has a probability for adoption

Even if the statute were ambiguous, our interpretation is consistent with legislative intent. "The dependency scheme is informed by a policy that respects the child's interest in belonging to a family unit and protects his or her right to 'a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' " (*In re John F*. (1994) 27 Cal.App.4th 1365, 1376.) The Legislature finds adoption and guardianship more suitable for a child's well-being than foster care, which it considers to be a temporary method of caring for children. (Welf. & Inst. Code, § 396; *In re Cristella C*. (1992) 6 Cal.App.4th 1363, 1370 [recognizing legislative preference to avoid "the bleak future in foster care limbo"].)

Under J.M.'s reading of subparagraph (c)(4)(A), a dependent child's unique status as a seriously disabled resident of a subacute care facility could render the child ineligible for guardianship with a relative. If subparagraph (c)(4)(A) were not available, the

---

[2] See footnote 1, *ante*, page 5.

juvenile court's options would be limited to those stated in subdivision (b). The preferred permanent plan under that subdivision is adoption, but that may not be available due to the child's disability. The next preferred alternative—a relative guardianship—would also be unavailable because the statute requires the child to be living with the relative in order for that person to be appointed legal guardian. (Subd. (b)(3).) But the child would be eligible for a nonrelative legal guardianship. (Subd. (b)(5).) Reading a limitation into paragraph (c)(4)(A) that would render a seriously disabled dependent child ineligible for a *relative* guardianship is at odds with the importance the Legislature has placed on stable permanent family relationships and the preference for guardianship over foster care.

We therefore interpret paragraph (c)(4) as allowing the juvenile court to select a permanent plan under specified conditions without finding a child likely to be adopted. In circumstances such as those presented here, the juvenile court may consider under subparagraph (c)(4)(A) whether adoption *or* termination of parental rights is not in a child's best interest because of an enumerated condition which would also support a finding under subparagraph (c)(1)(B). J.M. meets the condition described in subparagraph (c)(1)(B)(iii): He is placed in a residential treatment facility, adoption is unlikely because of a severe disability requiring specialized care, and continuing parental rights will not affect his ultimate placement.

B. **THE PLAN SELECTED FOR J.M. WAS NOT AN ABUSE OF DISCRETION**

J.M. argues that the juvenile court erred by ordering J.M.'s grandmother to become his legal guardian under subparagraph (c)(4)(A), which requires the court to consider legal guardianship before continuing a child in foster care, provided such placement is with "a suitable guardian" and "in the best interests of the child." (Subd. (c)(4)(A).) In J.M.'s view, grandmother is not a suitable guardian because she lacks the ability to care for him in her home. Nor does J.M. believe the guardianship is in his best interest because it contemplates grandmother overseeing his care in a residential facility, and it releases the Department from any obligation "to continue searching for an

appropriate placement" in a "true home."  He asks us to reverse the juvenile court's selection of guardianship and direct that a new permanent plan of long-term foster care be selected and implemented.

"The best interest of the child is the fundamental goal of the juvenile dependency system, underlying … child safety, family preservation, and timely permanency and stability." (*In re William B*. (2008) 163 Cal.App.4th 1220, 1227.)  " ' "Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult." ' " (*Ibid.*) Stability and continuity of care are primary considerations in determining the child's best interest.  (*State Dept. of Social Services v. Superior Court* (2008) 162 Cal.App.4th 273, 287.)  Custody determinations in dependency proceedings are "committed to the sound discretion of the juvenile court," and such rulings "should not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318.)  We will not disturb a custody determination " ' "unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " (*Ibid*.)

Here, the juvenile court's determination that J.M.'s interests would be best served through legal guardianship with his maternal grandmother was not an abuse of discretion. Grandmother cannot be characterized a mere "friendly visitor," as J.M. argues.  The record shows that grandmother has long been a positive presence in J.M.'s life, and that the two share an emotional bond.  Grandmother has regularly visited J.M. since his accident, taking it upon herself to ensure that J.M. feels a sense of family and belonging. She has been his educational rights holder, has advocated on his behalf with the hospital and the regional center, and understands her guardianship responsibilities.  The juvenile court recognized this is "the rare case" where the child will not reside in the legal guardian's home, but that is not because grandmother is not a suitable guardian.  J.M. has specialized needs which not all loving parents or guardians would be able to meet in a "true home" setting.  Continued residence at the children's hospital may not be optimal,

10

but the record shows that grandmother is committed to J.M's best interest and supports moving him to a suitable permanent care facility should that become available. Continuing dependency jurisdiction will allow the juvenile court to encourage and monitor those efforts.

## III.  DISPOSITION

The selection and implementation order is affirmed.

11

_____

Grover, J.

**WE CONCUR:**

_____

Elia, Acting P. J.

_____

Danner, J.

**H046917 -** *In re J.M., D.F.C.S. v. J.M.*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. JD20212 |
| Trial Judge: | Hon. Amber S. Rosen |
| Counsel for Plaintiff/Respondent:<br>Santa Clara County Department of<br>Family and Children's Services | James R. Williams, County Counsel<br>Grace H. Kouba, Deputy County Counsel<br>Kristen Baker, Deputy County Counsel<br>Office of the County Counsel |
| Counsel for Defendant/Appellant:<br>J.M. | Leslie A. Barry<br>Under appointment by the Court of Appeal<br><br>Marissa Lopez-Scott<br>Legal Advocates for Children and Youth |

**H046917 - *In re J.M., D.F.C.S. v. J.M***