Filed 3/11/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICHARD PECH, | B300524 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 18STCV02178 |
| v. | |
| THOMAS E. MORGAN III et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Joshua R. Furman Law Corp. and Joshua R. Furman for Defendants and Appellants.

Law Offices of Richard Pech and Richard Pech for Plaintiff and Respondent.

———————————

In 1993, the State Bar's Committee on Mandatory Fee Arbitration published an advisory noting a curious gap in our statutory and case law concerning the recoverability of unpaid fees in an attorney's breach of contract action against a client. Although Business and Professions Code section 6148 makes clear that, in the absence of a valid fee agreement, an attorney may recover only a "reasonable fee" for services rendered, the Committee found no similarly clear standard where the parties had entered into the requisite fee agreement.[1] Almost three decades later, we also are unable to find a clear standard in our state law for determining what fees are recoverable in such a dispute.

In this appeal we hold, when an attorney sues a client for breach of a valid and enforceable fee agreement, the amount of recoverable fees must be determined *under the terms of the fee agreement*, even if the agreed upon fee exceeds what otherwise would constitute a reasonable fee under the familiar lodestar analysis. To be enforceable, the fee agreement cannot be unconscionable. And, as with every contract, the attorney's performance under the fee agreement must be consistent with the implied covenant of good faith and fair dealing. This requires a court adjudicating a fee dispute to determine, among other things, whether the attorney used reasonable care, skill, and diligence in performing his or her contractual obligations. This standard applies in determining the probable validity of an attorney's claim for breach of an enforceable fee agreement under the attachment statutes. (See Code Civ. Proc., § 484.010 et seq.)

---

[1]    Statutory references are to the Business and Professions Code, unless otherwise designated.

Defendants, former clients of attorney Richard Pech, appeal attachment orders entered in favor of Pech on his claims for unpaid fees in breach of the parties' fee agreements. The trial court found the fee agreements were valid and Pech had established the probable validity of his claims based on his billing statements, correspondence with defendants, and unrebutted evidence showing defendants disputed only a handful of the billing statements. This evidence was sufficient to support the attachment orders under the standard we articulate in this opinion. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *Pech Sues Defendants for Breach of the Parties' Fee Agreements*

Plaintiff Richard Pech is an attorney. Defendants Juanita Springs Associates LP (Juanita Springs) and Covina Hills MHC LP (Covina Hills) invest in commercial properties, including a mobile home park. Defendant Thomas Morgan III is a principal of Juanita Springs and Covina Hills.

Pech filed this lawsuit to recover attorney fees allegedly incurred representing defendants in four legal matters related to defendants' operation and ownership of a mobile home park. The operative complaint refers to these matters as the failure to maintain case, the insurance case, the mandamus case, and the takings case. The parties executed written retainer agreements for the failure to maintain and insurance cases. As for the mandamus and takings cases, the complaint alleges an implied-in-fact contract existed based upon Pech's "long history" of providing legal services to defendants and the parties' understanding that cases related to the mobile home park would be billed at the same rate.

As relevant to this appeal, the complaint asserts causes of action for breach of contract based on defendants' alleged failure to pay Pech's attorney fees as provided in the fee agreements.

**2.** ***Pech Applies for Attachment of Defendants' Assets***

Pech filed applications for attachment orders against the assets of Juanita Springs and Covina Hills. In support of the applications, Pech offered a 92-page declaration and over 2,000 pages of exhibits, including the retainer agreements, billing records, and correspondence detailing his communications with Morgan and the services Pech's office rendered on the four matters. Every billing statement included a notice instructing defendants to "PLEASE EMAIL/FAX US IF YOU DISPUTE ANY AMOUNT ON THIS BILL." Pech's evidence showed defendants objected to only four of the final statements. After accounting for defendants' payments, Pech's evidence showed unpaid fees and costs totaling over $821,000 and accrued interest in excess of $298,000.

In opposition to the applications, defendants offered the declaration of André Jardini, an attorney and legal billings expert. Jardini opined that there were "serious issues regarding the compensability of certain fees and costs invoiced by Pech"; that Pech did not use "billing judgment and care" in the submission of his invoices, which were " 'wordy' to the point of being difficult to understand"; and that Pech's invoices were "overstated based on his use of a minimum billing increment for every email . . . and review of every piece of paper." Jardini acknowledged, however, that he had not reviewed all the invoices for the failure to maintain action, which accounted for the bulk

4

of the unpaid fees.[2]  And he conceded he was "not able to specifically quantify [his] opinion as to the excessiveness of the fees and costs billed," other than to opine the invoices were "overstated by at least 20 [percent]."

### 3.    *The Trial Court Grants the Attachment Orders*

The trial court granted the applications for attachment of defendants' assets, concluding Pech had established the probable validity of his breach of contract claims.  With respect to the failure to maintain and insurance cases, the court found the parties had entered into valid and enforceable fee agreements that complied with section 6148's disclosure requirements.[3]  As for the mandamus and takings cases, the court found defendants had "impliedly agreed to the specified hourly rates [in Pech's other fee agreements] based on previous work performed by [Pech]."[4]  The court rejected defendants' contention that the agreements were unconscionable.

Regarding the amount of the attachment, the court determined Pech had established the probable validity of his

---

[2]    The failure to maintain case accounted for over $1 million of the total $1.1 million in unpaid fees and interest that Pech claimed for the four matters.

[3]    Under section 6148, subdivision (a), a written fee contract must disclose the rates, fees, and charges applicable to the case; the general nature of the legal services to be provided to the client; and the attorney's and client's respective obligations under the contract.

[4]    Under section 6148, subdivision (d)(2), a written fee agreement is not required when the fee arrangement is implied by the fact that the attorney's services are generally the same as previously rendered to and paid for by the client.

claims for all unpaid fees, but not for the related interest charges, which were not available under the terms of the fee agreements.[5] After recounting the relevant evidence supporting the applications—including Pech's "detailed account of his correspondence with Morgan," Pech's "various billing statements," and unrebutted evidence that defendants objected to only a handful of invoices—the court rejected defendants' contention that the fees were excessive or unreasonable. The trial court explained:

> "Jardini's opinion that the billing statements are excessive or unreasonable is unpersuasive under the circumstances. In the . . . retainer [agreements], [defendants] expressly agreed to pay the hourly rates stated therein. Thus, the hourly rates are fixed by contract. No lodestar determination of the reasonable fees is required in a breach of contract action where the hourly rates are specified. [Citations.] Factually, Jardini's opinion about the reasonableness of the fees is further undermined because he admits that he did not have 'the opportunity

---

[5] In rejecting the interest charges, the trial court adopted the reasoning of the State Bar's Standing Committee on Professional Responsibility and Conduct, which concluded interest charges are permitted, but "the attorney must advise the client in advance of any interest charge to be imposed on delinquent fees and the client must render an informed consent to such a charge." (Formal Opn. No. 1980-53.) Because the fee agreements were silent as to interest, the court concluded Pech had failed to establish the probable validity of his breach of contract claims with respect to the interest charges.

to perform a complete and thorough analysis of each invoice presented.' [Citation.] Notably, neither Morgan nor any other representative of the Defendants with knowledge of the history of legal services between the parties has submitted a declaration showing the services reflected on the billings were outside the scope of the agreed upon representation or legal tasks to be performed. Nor is there any declaration showing Morgan, or anyone else, objected to the form or substance of the bills until Pech indicated he would seek to withdraw as counsel."

Thus, the court granted the applications, concluding: "Plaintiff's declaration, as well as the billing statements, [establish] that [Pech] performed a substantial amount of legal work" on the four matters, and "Jardini's opinion is belied by evidence that Defendants did not object to nearly all of the billing statements."

The trial court entered right to attach orders and orders for issuance of writs of attachment. Defendants filed a timely notice of appeal.

## DISCUSSION

1. ***In an Action to Collect Unpaid Fees based on Breach of a Valid Attorney Fee Agreement, the Terms of the Fee Agreement Determine the Amount of Recoverable Fees***

Section 6148 belongs to a trio of related statutes governing fee contracts between lawyers and their clients. (*Leighton v. Forster* (2017) 8 Cal.App.5th 467, 483 (*Leighton*); *Arnall v.*

7

*Superior Court* (2010) 190 Cal.App.4th 360, 365.) Section 6146 restricts the use of contingency fee agreements in medical malpractice actions; section 6147 regulates the form and content of contingency fee agreements outside the medical malpractice context; and section 6148 applies to fee agreements that do not involve a contingency fee. (*Leighton*, at p. 483.) These statutes "operate to ensure that clients are informed of and agree to the terms by which the attorneys who represent them will be compensated." (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 460; *Leighton*, at pp. 483–484.)

Under section 6148, in "any case" that does not involve a contingency fee, "in which it is reasonably foreseeable that total expense to a client, including attorney fees, will exceed one thousand dollars ($1,000), the contract for services in the case shall be in writing" and "shall contain all of the following: [¶] (1) Any basis of compensation including, but not limited to, hourly rates, statutory fees or flat fees, and other standard rates, fees, and charges applicable to the case. [¶] (2) The general nature of the legal services to be provided to the client. [¶] (3) The respective responsibilities of the attorney and the client as to the performance of the contract." (§ 6148, subd. (a).) These requirements do "not apply" to fee arrangements that are "implied by the fact that the attorney's services are of the same general kind as previously rendered to and paid for by the client." (§ 6148, subd. (d)(2).) The "[f]ailure to comply with any provision of [section 6148] renders the agreement voidable at the option of the client, and the attorney shall, upon the agreement being voided, be entitled to collect a reasonable fee." (§ 6148, subd. (c).)

While section 6148 makes clear that the absence of a valid written or implied-in-fact fee agreement limits an attorney to the

8

collection of a "reasonable fee" for service rendered on a client's behalf (§ 6148, subd. (c)), there does not appear to be a similarly clear standard in our statutory or case law for determining what fees an attorney may collect in an action based on a client's breach of a valid and enforceable fee agreement. (Cf. *Leighton, supra,* 8 Cal.App.5th at pp. 483, 490 [cataloguing statutory provisions governing fee contracts and explaining section 6148, subdivision (c) codifies the general rule that when legal services have been provided without a valid fee agreement, the attorney may recover the reasonable value of the services she performed in the action upon a common count for quantum meruit].)

Recognizing this apparent gap in our law, the State Bar's Committee on Mandatory Fee Arbitration (the Committee) undertook to examine what standard arbitrators should apply in determining the fees to be awarded for a client's breach of a valid fee agreement.[6] The Committee's inquiry resulted in

---

[6]    The Legislature enacted the Mandatory Fee Arbitration Act (MFAA) (§ 6200 et seq.) to eliminate a disparity in bargaining power between attorneys and clients attempting to resolve disputes about attorney fees and to relieve clients of the need to retain a new attorney to litigate such disputes. (*Dorit v. Noe* (2020) 49 Cal.App.5th 458, 467.) Arbitration under the MFAA is voluntary for the client and mandatory for an attorney if commenced by a client. (§ 6200, subd. (c).) Consistent with the MFAA's purpose, the Legislature instructed the State Bar to establish and administer an effective, inexpensive system of arbitration for fee disputes before local bar associations. (*Dorit,* at p. 467; *Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 564–565.) The Committee's primary function is to oversee that system and to review rules of procedure promulgated by local bar associations to ensure

9

Arbitration Advisory 1993-02, which articulates a two-step process, combining principles of contract law and an unconscionability analysis under rule 1.5 of the Rules of Professional Conduct (Rule 1.5), to determine whether and to what extent an attorney is entitled to collect fees as provided in a statutorily compliant fee agreement.  (Com. on Mandatory Fee Arbitration, State Bar, Arbitration Advisory 1993-02, Standard of Review in Fee Disputes Where There Is a Written Fee Agreement (Nov. 23, 1993) pp. 1–2 (Advisory 1993-02).)[7]

---

they provide for a fair, impartial, and speedy hearing and award. (§ 6200, subd. (d).)

[7]      Advisory 1993-02 refers to former rule 4-200 of the Rules of Professional Conduct.  On November 1, 2018, our Supreme Court approved Rule 1.5, which replaced former rule 4-200.

Rule 1.5 prohibits an attorney from contracting for, charging, or collecting an unconscionable or illegal fee.  Under the rule, the conscionability of a fee "shall be determined on the basis of all the facts and circumstances existing at the time the agreement is entered," including:  "(1) whether the lawyer engaged in fraud or overreaching in negotiating or setting the fee; [¶] (2) whether the lawyer has failed to disclose material facts; [¶] (3) the amount of the fee in proportion to the value of the services performed; [¶] (4) the relative sophistication of the lawyer and the client; [¶] (5) the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; [¶] (6) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; [¶] (7) the amount involved and the results obtained; [¶] (8) the time limitations imposed by the client or by the circumstances; [¶] (9) the nature and length of the professional relationship with the client; [¶] (10) the experience, reputation, and ability of the lawyer or lawyers performing the services; [¶] (11) whether the fee is fixed or contingent; [¶]

10

As we will explain, we conclude the standard the Committee adopted for fee arbitrations is sound and this standard should likewise apply to civil suits for breach of a fee agreement that are adjudicated in the superior court.[8]

Under Advisory 1993-02, when arbitrators are presented with a fee agreement that complies with section 6148, the arbitrators' first step is to review the agreement's terms to ensure the agreed upon fee is not unconscionable under Rule 1.5. (Advisory 1993-02, *supra*, at p. 2; see fn. 7, *ante*.) Critically, the Committee adopted an *unconscionability* standard for this determination—not unreasonableness—because applying "the 'reasonableness' standard of review to the terms of a written fee agreement would eliminate the difference between instances where the attorney has entered into a written fee agreement with his or her client, and those where the attorney has failed to do so and is limited to a reasonable fee under section 6148." (Advisory 1993-02, *supra*, at p. 2.) The Committee explained:

> "For example, the arbitrators may find that the prevailing hourly rate charged by similarly experienced attorneys for similar work in the community is less than $400 per hour, and, if the issue were the determination of a

(12) the time and labor required; and [¶] (13) whether the client gave informed consent to the fee." (Rule 1.5(b), fns. omitted.)

[8] As noted, arbitration under the MFAA is voluntary for the client and mandatory for an attorney if commenced by a client. (§ 6200, subd. (c).) In this case, defendants waived the right to arbitrate by filing a demurrer to the first amended complaint and seeking judicial resolution of the fee dispute. (See § 6201, subd. (d)(1).)

'reasonable fee,' the arbitrators would choose that amount as the hourly rate. If, however, a valid written contract between lawyer and client provides for an hourly rate of $400.00, the arbitrators should use the terms agreed upon by the parties unless, taking into consideration the factors listed in [Rule 1.5] the arbitrators find that the $400.00 hourly rate is unconscionable. If the agreed upon rate produces an unconscionable result, a reasonable standard should be applied to the ultimate fee on the theory that the written agreement between the parties is not enforceable." (*Ibid.*)

If the arbitrators determine the fee agreement is not unconscionable, their next step is to "review the attorney's performance *under the terms of the agreement.*" (Advisory 1993-02, *supra*, at p. 2, italics added.) That review, the Committee notes, must account for the covenant of good faith and fair dealing, which is implied in every contract. (*Ibid.*) Thus, under Advisory 1993-02, arbitrators are to apply "a 'reasonableness' standard . . . in reviewing the *attorney's performance*" under the fee agreement, including an assessment of "whether the attorney used reasonable care, skill and diligence in performing the duties required of the attorney under the contract, that unnecessary, duplicative or unproductive time is not charged to the client, and that the attorney has not performed services that were required as a result of the attorney's negligence or some lack of ordinary skill or diligence." (*Id.* at pp. 2–3, italics added.)

12

The standard articulated in Advisory 1993-02 sensibly balances the competing interests that arise when a client breaches a fee agreement by refusing to pay an agreed upon fee.  The standard is consistent with section 6148's implicit recognition that an attorney is free to contract with a client for a fee that *exceeds* what might otherwise constitute "reasonable" compensation, as long as the rate to be charged and general nature of the legal services to be provided are disclosed in the contract.  (§ 6148, subds. (a) & (c).)  But the standard also appropriately limits the right to contract freely by incorporating the general prohibition against enforcement of unconscionable contract provisions and, specifically, the factors listed in Rule 1.5 for determining whether an attorney's fee is unconscionable.  (See Civ. Code, § 1670.5, subd. (a) [unconscionable contract clauses are unenforceable]; *Shaffer v. Superior Court* (1995) 33 Cal.App.4th 993, 1002–1003 [applying general unconscionability principle to fee dispute; concluding factors listed in former rule 4-200 of the Rules of Professional Conduct limit the scope of relevant inquiry].)  Finally, and critically, the standard recognizes, consistent with the attorney's fiduciary duty and the implied covenant of good faith and fair dealing, that the attorney has a contractual obligation to render performance in good faith and in a professional manner, and that the attorney's performance must be reviewed under a reasonableness standard that accounts for this obligation.  (See *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371–372 [the implied covenant of good faith and fair dealing obligates a party having discretionary power under a contract to exercise that power in good faith]; *Cox v. Delmas* (1893) 99 Cal. 104, 123 ["The relation between attorney and client is a fiduciary

13

relation of the very highest character, and binds the attorney to most conscientious fidelity—*uberrima fides*."].)  We conclude this is the appropriate standard for adjudicating an attorney's claim against a client for breach of a valid fee agreement.

The trial court found the fee agreements in this case were valid under section 6148 and the rates specified in the agreements were not unconscionable.  Based on these findings, which defendants do not dispute, the court concluded "the hourly rates are fixed by contract" and "[n]o lodestar determination of reasonable fees is required in a breach of contract action where the hourly rates are specified."  Defendants contend this was error, arguing "the trial court should have considered the 'lodestar determination' of reasonableness and necessity as a matter of law."  We disagree.

In determining the appropriate attorney fee award that a litigation adversary must pay to the prevailing party under our fee shifting statutes, California courts begin with the "lodestar"—i.e., "the number of hours reasonably expended multiplied by the reasonable hourly rate."  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)  The "reasonable rate" component is the rate "prevailing in the community for similar work."  (*Ibid.*)  The lodestar approach is " 'fundamental to a determination of an appropriate attorneys' fee award,' " because it "anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary."  (*Ibid.*)  This objective standard is necessary because the litigation adversary *is not a party to* the prevailing party's attorney fee agreement.  Thus, much like an attorney who has failed to make a valid fee agreement with his or her client,

14

the lodestar approach appropriately limits a prevailing party to a "reasonable fee" award. (§ 6148, subd. (c).)

The trial court correctly held a lodestar determination is not required in a breach of contract action where an attorney's hourly rate is specified in a fee agreement. To hold otherwise would ignore the statutorily recognized difference between instances where the attorney has entered into a valid fee agreement with his or her client, and those where the attorney has failed to do so and is limited to a "reasonable fee" under section 6148. There is no dispute that the fee agreements in this case were valid and that the rates specified in the agreements were not unconscionable. Thus, the only question is whether, under the reasonableness standard we have adopted for evaluating an attorney's performance under a fee agreement, substantial evidence supports the trial court's finding that Pech's contract claims have probable validity. We turn to that question now.

2. *Pech Established the Probable Validity of His Claims for Breach of the Fee Agreements*

Provisional relief in the form of an attachment is available for money claims based on breach of contract.[9] (Code Civ. Proc., § 483.010, subd. (a) [attachment "may be issued only in an action on a claim or claims for money, each of which is based upon a contract"].) The trial court must issue a right to attach order if

_____

[9] Attachment is a provisional remedy, ancillary to the main action. (*Loeb & Loeb v. Beverly Glen Music, Inc.* (1985) 166 Cal.App.3d 1110, 1117 (*Loeb & Loeb*).) "A court's determinations under the attachment law have no effect on the determination of any issues in the action, nor may the court's determinations regarding the attachment be given in evidence or referred to at trial." (*Ibid.*, citing Code Civ. Proc., § 484.100.)

15

it finds, among other things, that "[t]he plaintiff has established the probable validity of the claim upon which the attachment is based." (*Id.*, § 484.090, subd. (a).)

A claim has probable validity "where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (Code Civ. Proc., § 481.190; *Loeb & Loeb, supra,* 166 Cal.App.3d at p. 1118.) This definition requires the plaintiff to "at least establish a prima facie case." (Cal. Law Revision Com. com., 15A West's Ann. Code Civ. Proc. (2020 ed.) foll. § 481.190.) If the defendant opposes the application, "the court must then consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." (*Ibid.*; *Loeb & Loeb,* at p. 1120.)

A trial court's factual findings in an attachment proceeding, including its probable validity finding, are subject to our substantial evidence standard of review. (*Loeb & Loeb, supra,* 166 Cal.App.3d at p. 1120; *Bank of America v. Salinas Nissan, Inc.* (1989) 207 Cal.App.3d 260, 273.) "We review the evidence on appeal in favor of the prevailing party, resolving conflicts and drawing reasonable inferences in support of the judgment." (*Claussen v. First American Title Guaranty Co.* (1986) 186 Cal.App.3d 429, 431; *Bank of America,* at p. 273.) "[W]e cannot substitute our inferences for those of the trial court reasonably grounded on substantial evidence." (*Claussen,* at p. 436; *Bank of America,* at p. 273.)

To establish a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1367.) As we held

16

above, with respect to the second element, when an attorney claims the client breached a valid fee agreement, the attorney must demonstrate he reasonably performed his obligations under the agreement in a manner consistent with the implied covenant of good faith and fair dealing.

Focusing on this second element, defendants challenge the trial court's probable validity finding on two grounds. First, they contend Pech failed to make a prima facie showing of the "reasonableness and necessity" of the legal services he performed under the fee agreements. Second, they argue, "even if Pech had made a prima facie showing, [defendants'] opposition evidence, supported by expert opinion, established that Pech was unlikely to succeed anyway." The record does not compel reversal on either ground.

With respect to Pech's prima facie showing, the evidence supports the trial court's implicit finding that Pech reasonably performed his obligations under the fee agreements. Pech's evidence consisted primarily of his declaration and the billing statements his office issued to defendants during the four cases. Although the trial court fairly characterized Pech's evidence as "unwieldy," our review of his declaration confirms it outlines the major challenges of each case, correspondence with Morgan showing Morgan was pleased with the work reflected in Pech's billing statements, and the results Pech obtained on defendants' behalf. The billing statements, as the court's order observes, provide "a brief description of services rendered" and contain a notice on each page instructing defendants to "PLEASE EMAIL/FAX US IF YOU DISPUTE ANY AMOUNT ON THIS BILL." As the trial court emphasized in rejecting defendants' contention that the "billing statements [were] excessive or

17

*unreasonable*," the statements show Pech's office performed a "substantial amount of legal work" on defendants' behalf and the undisputed evidence proved defendants did not object to a single invoice until after Pech indicated he intended to withdraw as counsel. (Italics added.) Pech made a sufficient prima facie showing that he reasonably performed his obligations under the fee agreements with respect to the unpaid invoices. (See *Loeb & Loeb, supra,* 166 Cal.App.3d at p. 1119 [evidence that attorney sent clients monthly billing statements that "were not questioned, disputed or otherwise objected to" by clients was "sufficient evidence of the probable validity" to sustain attorney's prima facie burden on breach of fee agreement claim].)

As for the contention that the trial court was compelled, as a matter of law, to resolve the relative merits of the claims in defendants' favor because they alone offered "expert opinion" evidence, the argument's premise is flawed. Without citation to authority, defendants maintain "expert opinion is required to establish that an attorney complied with ethical rules" and, since "Jardini's declaration was uncontradicted," the trial court was obliged to accept his opinions "in the absence of other non-arbitrary bases to reject it." It is well established, however, that the determination of what constitutes reasonable legal services is committed to the discretion of the trial court, and the "value of legal services performed in a case is a matter in which the trial court has its own expertise." (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623.) Thus, the "trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony." (*Ibid.*)

In any event, the trial court had nonarbitrary reasons for rejecting Jardini's opinions. The court's order indicates

it independently reviewed Pech's billing statements and found, contrary to Jardini's opinions, the statements were timely submitted, concise, and adequately identified the billers by their initials on each billing entry. Additionally, the court found, "[f]actually, Jardini's opinion about the reasonableness of the fees [was] undermined because he admit[ted] that he did not have 'the opportunity to perform a complete and thorough analysis of each invoice presented.'" We are satisfied that the court reasonably applied its own expertise in determining the services reflected in the billing statements were reasonable and necessary based on Pech's declaration regarding the issues and challenges presented in each of the four cases. We find no error.

## DISPOSITION

The orders are affirmed. Plaintiff Richard Pech is entitled to his costs.

**CERTIFIED FOR PUBLICATION**

EGERTON, J.

We concur:

EDMON, P. J.                    DHANIDINA, J.

19