Filed 7/15/24  Hooman Automotive Group v. Glaser Weil Fink etc. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HOOMAN AUTOMOTIVE GROUP, et al., | B322256 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 21STCV45057) |
| v. | |
| GLASER WEIL FINK HOWARD AVCHEN & SHAPIRO, LLP, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William Fahey, Judge.  Affirmed.

Rosen Saba, Elizabeth L. Bradley; Esner, Chang, Boyer & Murphy, and Stuart B. Esner for Plaintiffs and Appellants.

Nemecek & Cole, Claudia L. Stone, and Daniel L. Reback for Defendant and Respondent.

Plaintiffs Hooman Nissani (Nissani) and his corporate entities HK Automotive Group, Inc. (HK), RHC Automotive, Inc. (RHC), and RHH Automotive, Inc. (RHH), collectively plaintiffs,[1] appeal from a judgment awarding attorney fees following arbitration under the Mandatory Fee Arbitration Act (MFAA) (Bus. & Prof. Code, § 6200 et seq.)[2] in favor of their former legal counsel, defendant Glaser Weil Fink Howard Avchen & Shapiro LLP (Glaser Weil).  Plaintiffs argue the trial court erred when it concluded that the $462,457.31 arbitration award was binding because plaintiffs willfully failed to appear at arbitration.  Plaintiffs also assert the trial court erred in entering judgment against HK, RHC, and RHH since those entities were not given notice of the arbitration and did not elect to participate in it.  Plaintiffs further assert the judgment should not have been entered against Nissani personally because he did not participate in arbitration in his personal capacity.

We affirm the judgment.  We conclude the evidence does not compel a finding as a matter of law that plaintiffs' failure to appear at arbitration was not willful, i.e. done voluntarily, intentionally, and with knowledge that failing to appear could forfeit their right to a trial de novo under section 6204.  In addition, the trial court did not err in entering judgment against all four plaintiffs as HK, RHC, and RHH, via their fictitious business name Hooman Automotive Group, and Nissani, in his personal capacity, initiated the arbitration.

---

[1]     The complaint also listed "Hooman Automotive Group; a California corporation" as a plaintiff.

[2]     All subsequent undesignated statutory references are to the Business and Professions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

Nissani owns and is the president or chief operating officer of several corporations including HK (formed in 2013), RHC (formed in 2015), and RHH (formed in 2016). These corporations did business under the fictitious business name Hooman Automotive Group.

### I.     First Engagement Agreement

In September 2013, Hooman Automotive Group and Nissani retained Glaser Weil to provide legal services. The engagement agreement stated the firm was being engaged to provide services to both Nissani "individually, and to Hooman Automotive Group."

On October 15, 2019, and again on January 29, 2020, the parties amended the engagement agreement. In each amendment, Nissani agreed that he and Hooman Automotive Group unconditionally owed Glaser Weil past due attorney fees and costs and he agreed to a payment plan. In the October 2019 amendment to the engagement letter, Nissani acknowledged that both he "personally" and his "related entities" owed Glaser Weil $974,026.84.

### II.    Second Engagement Agreement

In October 2020, Glaser Weil and Nissani, individually and on behalf of Hooman Automotive Group, entered into an engagement agreement for legal representation before the California Department of Tax and Fee Administration (CDTFA). The engagement agreement provided: "The Firm will represent you, individually and the members of the Hooman Automotive Group identified above in this letter, all of which are managed by you as Corporate President. The Firm will represent all entities

3

above before the CDTFA as it pertains to sales and use tax audit[s] of several automobile stores." Nissani signed the engagement agreement "[i]ndividually, and on behalf of and as President of each above named member of the Hooman Automotive Group." The agreement specifically identified HK, RHC, and RHH as those members.

## III.    Nissani Initiated and then Failed to Appear at Fee Arbitration

Over the years, Glaser Weil billed plaintiffs $7,620,859.88 in fees and costs. Plaintiffs paid $6,330,891.59 and Glaser Weil wrote off $827,510.98, leaving a remaining balance of $462,457.31. When plaintiffs refused to pay the remaining balance, Glaser Weil ceased representing them. In March 2021, Glaser Weil sent Nissani and Hooman Automotive Group a letter stating that Glaser Weil intended to initiate a proceeding against Hooman Auto Group and Hooman, individually, to recover the debt, and advised that plaintiffs had "the right under Sections 6200-6206 of the California Business and Professions Code to request arbitration of this fee dispute by an independent, impartial arbitrator or panel of arbitrators through a bar association program created solely to resolve fee disputes between lawyers and clients." Attached to the letter was a "Notice of Client's Right to Fee Arbitration" identifying the Los Angeles County Bar Association as the local program that could hear the matter.

In April 2021, Hooman Automotive Group and Nissani[3] initiated an attorney-client fee arbitration against Glaser Weil before the Los Angeles County Bar Association. Nissani and Hooman Automotive Group claimed that Glaser Weil charged too much because of " 'Billed hours & Work Product Issues.' " Glaser Weil responded that all charges billed were proper, Nissani and Hooman Automotive Group received monthly statements for the charges, and interest on the outstanding balances was charged pursuant to an engagement agreement.

Attorney Susan Keenberg chaired the three-person fee arbitration panel. Nissani and Hooman Automotive Group were not represented by counsel. Attorney Claudia L. Stone represented Glaser Weil.

On September 4, 2021, Keenberg issued a notice of hearing stating that the fee arbitration would be held on October 28, 2021, at 10:00 a.m., via Zoom video conference. The notice identified Hooman Automotive Group and Nissani as the clients, and Glaser Weil and Peter M. Weil as the attorneys. The notice warned: "If either the client or the responding attorney does NOT appear at the hearing after due notice to appear at the hearing, the arbitrator may hear and determine the controversy upon the evidence produced, notwithstanding such failure to appear. **Any party who willfully fails to appear at the hearing, as provided for under the rules of procedure governing this proceeding, may not be entitled to a trial in**

---

[3]     On the State Bar of California request for arbitration form, Hooman Automotive Group was listed as the client but Nissani signed the form without indicating that he did not do so in his personal capacity.

**the civil court after a non-binding arbitration.  The arbitrator may include findings in the arbitration award as to the willfulness of any party's non-appearance at the hearing.**"

On October 27, 2021, at 2:08 p.m., the day before arbitration was to commence, Nissani's assistant, Blanca Vargas, emailed Keenberg, writing:  "My name is Blanca and I am Mr. Nissani's assistant.  Unfortunately Mr. Nissani is very ill at home and we are awaiting his doctors [*sic*] note and COVID-19 results.  As of right now we have been told that it seems he has all the symptoms of having COVID.  We need to cancel and reschedule tomorrows [*sic*] hearing.  Please keep his health information confidential and only let the other side know we need to cancel due to health reasons."

Keenberg replied that the arbitration "will go forward as scheduled tomorrow unless Mr. Nissani provides us with a doctor's note TODAY.  The note must state that the doctor has determined that Mr. Nissani is unable to attend a video meeting."  Vargas then transmitted a hand-written doctor's note from Soheil Soleymani, M.D.  Identifying Nissani as the patient, the note stated:  "Patient evaluated in the clinic today.  Complete bed rest advised until stabilized."  Keenberg replied that the doctor's note was insufficient and arbitration would go forward.

Vargas emailed back:  "We were hoping that he would feel better but unfortunately he is not and his doctor has put him on Bed rest with very strong medication you [*sic*] asked for us to provide you with a doctor note stating so and we sent you a doctor note that clearly says he is ordered to be in bed without any sort of movement or any activities[.]  The fact that you are not showing any concerns for a witness['s] well-being or the fact

6

that you seem to be just ignoring the health issues that he is dealing with right now is unbelievable!  Please confirm that the arbitration hearing has been removed for tomorrow as our main witness is unable to attend due to his very serious health issues."  She also expressed discontent that Keenberg shared the email exchange with Glaser Weil.

Keenberg's reply explained that ex parte communications were not permitted in arbitration proceedings and all communications with the arbitration panel would be shared with all parties.  Keenberg pointed out that she requested the doctor's note before Vargas obtained it, and the note did not say Nissani was too ill to appear by video.  Keenberg stated, "it isn't fair to all involved to cancel the arbitration on less than 24 hours' notice absent a suitable doctor's note."

On October 28, 2021, 25 minutes before the scheduled start of the arbitration hearing, Keenberg received an email directly from Nissani's email address, stating:  "I am very confused on what you mean about being fair, are you suggesting in order for this to be fair, our witness should have know [*sic*] he was going to get ill a few days prior to getting ill and should have notified you?  [¶]  Also your Dr. note [*sic*] request said you need it to say that the witness cannot attend video meeting, the Dr. Note [*sic*] says he need to be in Bed clearly he doesn't have a computer in Bed so how can he attend by Video.  [¶]  If you really need to we will ask the Dr. [*sic*] to re-write the note, as you can understand we don't control what the Dr. Says [*sic*], but what is very alarming to me is that you have no concern or care for our witnesses [*sic*] wellbeing and health!"  Nissani never submitted a revised doctor's note.

Noting that the email was sent from Nissani's personal account, Keenberg responded that even if Nissani was in bed, he could have participated over Zoom using a cellphone or tablet.

## IV.  Arbitration Award

Nissani failed to appear at the October 28, 2021 fee arbitration and did not submit any information regarding his claim that Glaser Weil charged too much because of "Billed hours & Work Product Issues."

On November 8, 2021, the arbitration panel issued its decision, which identified "Hooman Automotive Group and Hooman Nissani" as the client.  The decision stated "Client failed to appear for the Hearing after being given Notice to Appear both electronically and via U.S. Mail.  [Glaser Weil] appeared via Zoom video conference with counsel, and has agreed to non-binding arbitration.  Accordingly, the Arbitration Findings and Award is NON-BINDING and is subject to Business and Professions Code § 6204, regarding the finality of non-binding awards and the time limit on the right to a trial de novo."

The arbitration panel found there was a valid written fee agreement, Glaser Weil "routinely provided Client with carefully itemized billings," and the charges were reasonable.  The panel stated:  "Client, Hooman Automotive Group and Hooman Nissani jointly and severally, shall pay Attorney, Peter M. Weil of Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP four hundred sixty-two thousand four hundred fifty-seven dollars and thirty-one cents ($462,457.31) plus interest in the amount of the prevailing legal rate per annum from the 30th day after the date of service of this award."

That same day, Vargas emailed on Nissani's behalf and requested the arbitration panel hear the matter again.  The

8

following day, Keenberg denied the request for a rehearing because plaintiffs' request to postpone the fee arbitration "was not for good cause." Keenberg reiterated that the doctor's note was inadequate because it did not state that Nissani was unable to attend a video meeting, plus Nissani had made several attempts to prevent the timely scheduling of the arbitration. Keenberg explained:

"Throughout the administrative phase of this fee dispute arbitration, Mr. Nissani has steadfastly endeavored to delay the hearing. For example, when proposed dates for the hearing were sent to the parties in August, Mr. Nissani first said he would check with his attorney and later said he was completely unavailable on any dates in October. But Mr. Nissani didn't have an attorney representing him in this arbitration and he eventually agreed to a hearing on October 28th. In addition, despite numerous warnings, Mr. Nissani (and Ms. Vargas) routinely failed to copy the respondent's attorney on their correspondence and sent many ex parte communications to me without even including [the other two arbitrators hearing the case]."

On November 10, 2021, the fee arbitration panel served the parties with the award in favor of Glaser Weil and against Nissani and Hooman Automotive Group for $462,457.31 plus interest.

## V.    Plaintiffs' Lawsuit and Glaser Weil's Petition to Confirm the Arbitration Award

In December 2021, plaintiffs, represented by counsel, filed a complaint against Glaser Weil for breach of contract based on incorrect billing and incompetent legal services. Plaintiffs alleged: "On or about 2013, Plaintiffs engaged Defendant to

perform legal services on its behalf. For the next eight (8) years, Defendant performed legal services for Plaintiffs on a variety of matters until February 2021." Plaintiffs asserted they paid all fees lawfully billed, but there had been a non-binding arbitration as to other fees claimed by Glaser Weil. Plaintiffs alleged that they "now seek to set aside the non-binding arbitration award served on Plaintiffs on November 10, 2021 and allege that Defendant breached its contractual obligations to Plaintiffs." Plaintiffs claimed the arbitration was improperly conducted in plaintiffs' absence because "Nissani was ill and unable to attend."

In response, Glaser Weil filed a petition to confirm the arbitration award, arguing plaintiffs forfeited their right to trial de novo because they willfully failed to appear at the arbitration. Glaser Weil also sought prejudgment interest, fees, and costs. In support of the petition, Glaser Weil submitted the declarations of its counsel, Claudia Stone, and two Glaser Weil partners. Stone provided the email communications she received from the arbitration panel chair, Keenberg, showing the exchange between Keenberg and Nissani's assistant, Vargas, regarding the doctor's note. Barry Fink, a Glaser Weil partner, declared that on October 9, 2020, he entered into an agreement on behalf of the firm with Nissani, individually and on behalf of HK, RHC, and RHH, to represent plaintiffs before the CDTFA. Fink provided a copy of the engagement agreement and stated that all three corporations "sometimes did business as Hooman Automotive Group." Glaser Weil partner Peter Weil attested that the firm entered into the September 13, 2013 retention agreement with Nissani, individually and on behalf of the Hooman Automotive Group, and twice amended the agreement. Weil attached copies of the agreement and amendments to his declaration.

Glaser Weil further requested judicial notice of (1) a certificate showing there was no record that Hooman Automotive Group was a registered California corporation; (2) a certified copy of a fictitious business name statement for Hooman Automotive Group filed by HK in May 2018 stating that it started to transact business as Hooman Automotive Group in September 2013; and (3) Statements of Information filed by RHC and RHH that Hooman Nissani was their chief operating officer.

Plaintiffs opposed the petition to confirm the arbitration award, arguing: (1) Nissani, RHH, and RHC were not parties to the arbitration,[4] and (2) Nissani's and Hooman Automotive Group's failure to appear at the arbitration was not willful. In support of the opposition, Nissani provided a declaration stating HK began doing business as Hooman Automotive Group in September 2013, around the time it entered into an engagement agreement with Glaser Weil, and no other entities were added to that engagement agreement in the subsequent amendments. He attested that RHC, formed in 2015, and RHH, formed in 2016, have never done business under the fictitious business name Hooman Automotive Group. He stated he was an officer of both RHC and RHH. Nissani also attested that he was too ill to appear at the arbitration because he could not keep his eyes open and could barely move the day before the arbitration hearing. Plaintiffs also filed a declaration by Vargas discussing her email

---

[4]     Later, when objecting to Glaser Weil's proposed findings of fact and conclusions of law with respect to the court's ruling on the petition to confirm the award, plaintiffs argued HK also was not a party to the arbitration.

exchanges with Keenberg about the doctor's note and attesting that Nissani was "very sick."

After considering the parties' briefs, pleadings, and evidence, the court determined that Nissani and Hooman Automotive Group had no right to a trial de novo pursuant to section 6204, subdivision (a), because they willfully failed to appear at the arbitration hearing. The court also determined that the award could be confirmed against each plaintiff based on judicial admissions in their complaint that plaintiffs were parties to the contract and award, and because there was no such entity as Hooman Automotive Group, which is the fictitious business name used by HK, RHC, and RHH. The court confirmed the award against plaintiffs and stated that Glaser Weil was entitled to recover its attorney fees and costs pursuant to section 6203, subdivision (c).

In May 2022, the court entered judgment in favor of Glaser Weil and against HK, RHC, RHH, and Nissani in the amount of the arbitration award, plus prejudgment interest, attorney fees, and costs, for a total judgment of $499,279.02. Plaintiffs timely appealed.

## DISCUSSION

Plaintiffs contend the court erred by (1) finding that they willfully failed to appear at arbitration, and (2) entering judgment against HK, RHC, and RHH, and Nissani.

## I.    The MFAA

"The MFAA was first proposed by the Board of Governors of the State Bar of California in 1976 when, finding that disputes concerning legal fees were the most serious problem between members of the bar and the public, the board sought to create a mechanism for arbitrating disputes over legal fees and costs.

Recognizing the 'disparity in bargaining power in attorney fee matters which favors the attorney in dealings with infrequent consumers of legal services' [citation], that many clients could not afford hiring additional counsel to litigate fee disputes in the civil courts [citation], and that previous schemes that called for voluntary arbitration were ineffective [citation], the Legislature enacted the MFAA." (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 983.)

Under the MFAA, "when there is a fee dispute between an attorney and a client, the client may choose to submit the matter to arbitration by a local bar association. If the client elects such arbitration, the attorney must agree to arbitrate." (*Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 561 (*Schatz*); § 6200, subd. (c) ["arbitration under this article . . . shall be voluntary for a client and shall be mandatory for an attorney if commenced by a client"].) "Arbitration under the MFAA is limited to disputes concerning legal fees, costs, or both." (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 373; § 6200, subd. (a).)

"The parties may agree in writing to be bound by the award of arbitrators . . . at any time after the dispute over fees, costs, or both, has arisen. In the absence of such an agreement, either party shall be entitled to a trial after arbitration if sought within 30 days, . . . except that if either party willfully fails to appear at the arbitration hearing in the manner provided by the rules adopted by the board of trustees, that party shall not be entitled to a trial after arbitration." (§ 6204, subd. (a); *Schatz, supra*, 45 Cal.4th at p. 566.) "The determination of willfulness shall be made by the court," and "[t]he party who failed to appear at the arbitration shall have the burden of proving that the failure to

13

appear was not willful." (§ 6204, subd. (a).) "In making its determination, the court may consider any findings made by the arbitrators on the subject of a party's failure to appear." (*Ibid.*)

## II. Standards of Review

On appeal from an order confirming an arbitration award, we generally review the trial court's order under a de novo standard and the court's determination of disputed factual issues for substantial evidence. (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1217.) However "[i]n a case where the trier of fact has determined that the party with the burden of proof did not carry its burden and that party appeals, 'it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' [Citations.] Instead, 'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Ajaxo, Inc. v. E\*Trade Financial Corp.* (2020) 48 Cal.App.5th 129, 163 (*Ajaxo*).)

The primary disputed issue in the present appeal is the trial court's finding that plaintiffs' failure to appear was willful, and in the trial court, plaintiffs had the burden to prove that the failure to appear was not willful. Thus, because plaintiffs appeal the trial court's finding on an issue for which they bore the burden of proof, "we ask 'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Ajaxo, supra,* 48 Cal.App.5th at pp. 163–164; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.)

14

In addition, to the extent we consider the trial court's interpretation and application of statutes, we apply de novo review.  (*Carmel Development Co., Inc. v. Anderson* (2020) 48 Cal.App.5th 492, 503.)  " 'As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.  [Citation.]' [Citation.] '[W]e must first look to the words of the statute because they are the most reliable indicator of legislative intent.  [Citation.]  If the statutory language is clear and unambiguous, the plain meaning of the statute governs.  [Citation.]  [Citation.]'  [¶]  'If, however, the language supports more than one reasonable construction, we may consider "a variety of extrinsic aids, including the ostensible objects to be achieved" ' and the statute's legislative history."  (*De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 750.)

### III.    The Evidence Does Not Compel a Finding as a Matter of Law that Plaintiffs' Failure to Appear Was Not Willful

It is undisputed that plaintiffs failed to appear at the arbitration hearing.  Thus, to obtain a trial de novo, plaintiffs had the burden of proving to the trial court that their failure was not willful.  (§ 6204, subd. (a).)  As we discuss, the trial court did not err in concluding that plaintiffs failed to carry their burden of proof on this issue.

   *a.     Defining "Willful"*

The MFAA does not define "willful," and there is no case law discussing the meaning of "willful" in this context.  The legislative history of Statutes 1992, chapter 1265, section 6 (Sen. Bill No. 1405 (1991–1992 Reg. Sess.)), which added the "willful"

15

language to section 6204, subdivision (a),[5] also fails to shed light on the definition of willful in this context.

In proposing definitions of "willful," plaintiffs and Glaser Weil both cite *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 183–185 (*Kwan*), which analyzed the meaning of "willful" in the context of the Song-Beverly Consumer Warranty Act (Civ. Code, §§ 1790 et seq.).  Under the Song-Beverly Act, a buyer may recover a civil penalty in addition to damages if the seller's failure to comply with the act was "willful," but the term is undefined in that context.  (*Ibid.*; Civ. Code, § 1794, subd. (c).)  The *Kwan* court aptly acknowledged that "willful" is " 'used in different statutes with various shades of meaning.' " (*Kwan*, at p. 184, citing *Goodhew v. Industrial Acc. Com.* (1958) 157 Cal.App.2d 252, 256.)  For instance, the Penal Code states:  "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage."  (Pen. Code, § 7; see *Kwan*, at

---

[5]     This amendment to section 6204 added the following language to subdivision (a):  "[I]f either party willfully fails to appear at the arbitration hearing in the manner provided by the rules adopted by the board of governors, that party shall not be entitled to a trial after arbitration.  The determination of willfulness shall be made by the court.  The party who failed to appear at the arbitration shall have the burden of proving that the failure to appear was not willful.  In making its determination, the court may consider any findings made by the arbitrators on the subject of a party's failure to appear."  (§ 6204, subd. (a).)

16

p. 182.)  Nonetheless, "there is no shortage of cases construing the term, in penal statutes, as conveying more than mere volition" and also requiring knowledge of the consequences of the voluntary act.  (*Kwan*, at p. 182.)

*Kwan* explained that "[c]ivil cases show much the same line of analysis" and similarly require " 'intentional doing of something either with knowledge, express or implied' " of some serious consequence.  (*Kwan*, *supra*, 23 Cal.App.4th at p. 182.) " 'In civil cases the word "wilful" as ordinarily used in courts of law, does not necessarily imply anything blameable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done, was done or omitted intentionally.  It amounts to nothing more than this:  That the person knows what he is doing, intends to do what he is doing, and is a free agent.' " (*Davis v. Morris* (1940) 37 Cal.App.2d 269, 274; *Kwan*, at p. 183.)  The *Kwan* court ultimately concluded that the meaning of "willful" was statute-specific, and courts "should interpret willfulness in light of the particular statutory obligation allegedly violated and should eschew any interpretation that would render meaningless or inoperative the Act's distinction between willful and nonwillful violations."[6]  (*Kwan*, at p. 84.)

Black's Law Dictionary likewise indicates that "willful" means "[v]oluntary and intentional" plus something more.  (See Black's Law Dict. (11th ed. 2019) p. 1916, col. 2.)  Black's

---

[6]     *Kwan* held a violation of the Song-Beverly Act was not willful where the seller had a "good faith and reasonable belief the facts imposing the statutory obligation were not present." (*Kwan*, *supra*, 23 Cal.App.4th at p. 185.)

elaborates that, "[a] voluntary act becomes willful, in law, only when it involves conscious wrong or evil purpose on the part of the actor, or at least inexcusable carelessness, whether the act is right or wrong. The term willful is stronger than voluntary or intentional; it is traditionally the equivalent of malicious, evil, or corrupt." (*Ibid.*, italics omitted.)

Plaintiffs also point us toward cases involving judicial arbitration (see Code Civ. Proc., §§ 1141.10 et seq.), which typically allows for trial de novo following arbitration. Those cases hold that "[w]here a party deliberately attempts to circumvent court-ordered arbitration proceedings by requesting the arbitrator to enter an award in favor of the other party, it is not an abuse of discretion by the superior court to dismiss the action." (*Merritt v. Marks* (1985) 175 Cal.App.3d 825, 827, citing *Genovia v. Cassidy* (1983) 145 Cal.App.3d 452.) Under this line of cases, "[w]here a defendant defaults and there is neither a finding nor a showing of a 'premediated, intentional and purposeful course of action' [citation], there is no justification for dismissing the matter, and the request for a trial de novo should be granted." (*Merritt*, at p. 827.) Like the definitions of willful that we discuss above, these cases appear to require an intentional and purposeful failure to appear to support denial of a trial de novo.

Based on the foregoing, we conclude that "willful" in the context of the MFAA means that a party both intentionally and voluntarily chose not to appear at an arbitration hearing, and the party understood the consequences of failing to appear, i.e. forfeiture of the right to trial de novo.

18

### b. *Plaintiffs Failed to Carry Their Burden*

In the trial court, plaintiffs argued that Nissani's failure to appear was not willful because he was too ill to participate. Plaintiffs asserted the doctor's note provided by Nissani's assistant, Vargas, to the panel was sufficient because the doctor stated Nissani needed "complete bed rest." Plaintiffs argued that Hooman Automotive Group "was not represented by counsel, and Mr. Nissani was the company's primary witness, and could not be replaced. This was not simply a 'video meeting' which anyone suffering from COVID-19 symptoms could attend from bed." Plaintiffs averred: "Nissani wanted to attend the hearing, and had no desire to delay or avoid attending the hearing, since Hooman Automotive Group was the one who requested the arbitration and paid the $5,000 filing fee, and since Hooman Automotive Group had made a claim that it had overpaid Glaser Weil approximately $1.4 million."

Plaintiffs provided a declaration from Nissani, in which he attested that he became ill with COVID-19 a few days before the arbitration and that he could "barely move" or keep his eyes open. Nissani stated he waited until the day before the hearing to have his assistant request a continuance from the arbitrators because he was hoping he would be well enough to participate. Nissani further stated: "Due to my illness, it would have been absolutely impossible for me to participate in or testify in the October 28, 2021 arbitration proceeding in light of my illness. Nor could I or did I participate in any actual 'video meetings' or in-person meetings on that day due to my illness. Instead, I was very sick and in bed the entire day." Nissani's assistant, Vargas, also attested that she "observed Mr. Nissani very sick in bed."

19

However, plaintiffs' evidence was called into question by evidence provided by Glaser Weil and the findings of the arbitration panel chair, Keenberg. Despite requesting arbitration, Nissani sought to delay arbitration and was evasive in setting a hearing date. As Keenberg stated, "when proposed dates for the hearing were sent to the parties in August, Mr. Nissani first said he would check with his attorney and later said he was completely unavailable on any dates in October. But Mr. Nissani didn't have an attorney representing him in this arbitration and he eventually agreed to a hearing on October 28th. In addition, despite numerous warnings, Mr. Nissani (and Ms. Vargas) routinely failed to copy the respondent's attorney on their correspondence and sent many ex parte communications to me without even including [the other two arbitrators hearing the case]." When Keenberg required a doctor's note stating Nissani could not appear by video, Nissani did not produce one. When told the doctor's note Nissani did produce was inadequate, Nissani failed to obtain another note. Even in the trial court, plaintiffs produced no additional evidence showing Nissani was too ill to participate in the remotely held proceedings, other than the self-serving declarations from Nissani and his assistant. The court reasonably could have found that Nissani was not credible and intentionally sought to delay the arbitration proceedings to delay paying the outstanding legal bills.

Based on the foregoing, we cannot conclude that the evidence compels a finding in plaintiffs' favor. It was undisputed that plaintiffs (1) received notice in September 2021 that by failing to appear at the hearing, they could forfeit their right to trial de novo, (2) were aware arbitration was to proceed as scheduled unless Nissani presented a doctor's note stating he

20

could not appear by video, (3) never presented a doctor's note saying Nissani could not appear by video, and (4) did not appear at the scheduled arbitration. Therefore, plaintiffs knew the consequences of their choice not to appear and did so anyway.

We also reject plaintiffs' suggestion that the trial court "abdicated resolution of the issue of willfulness to the arbitrators." Plaintiffs cite *Trabuco Highlands Community Assn. v. Head* (2002) 96 Cal.App.4th 1183 and *Glaser, Weil, Fink, Jacobs & Shapiro, LLP v. Goff* (2011) 194 Cal.App.4th 423 in support of this contention, but both are of no assistance to plaintiffs. In *Trabuco,* at page 1190, the trial court abdicated its function to determine whether an arbitration award was binding because the court did not consider the parties' declarations. Instead the court "expressly noted it was relying on a letter by the arbitrator that said the arbitration was binding." (*Ibid*.) In *Goff*, the parties disputed whether arbitration was binding, and the trial court completely deferred the issue to the arbitrators even though the arbitrators' finding that the arbitration was binding was subject to independent judicial review. (*Goff*, at pp. 433–435.)

Here, by contrast, there is no indication in the record that the trial court disregarded evidence, deferred rulings to the arbitration panel, or failed to make its own factual finding. Moreover, in the case at bar, the trial court was statutorily authorized to "consider any findings made by the arbitrators on the subject of a party's failure to appear," (§ 6204, subd. (a)), and therefore could give such findings weight when making its decision.

Plaintiffs' arguments amount to a request that we reweigh the evidence. It is not within our province to do so. (*In re Aurora*

*P.* (2015) 241 Cal.App.4th 1142, 1167 [the reviewing court does not reweigh evidence, reevaluate the credibility of witnesses, or indulge in inferences contrary to the findings of the court].) Because plaintiffs have not established that the evidence compelled a ruling in their favor on an issue on which they bore the burden of proof, we affirm the trial court's finding.

## IV. The Court Did Not Err in Confirming the Arbitration Award and Entering Judgment Against All Four Plaintiffs

Plaintiffs contend the court erred in confirming the arbitration award and entering judgment against them because (1) the individual corporate entities were not named in Glaser Weil's MFAA notice, did not elect to participate in the arbitration, and were not implicated in the fee dispute, and (2) Nissani did not arbitrate in his personal capacity. As we explain, the court properly entered judgment against all four plaintiffs.

### a. HK, RHH, and RHC

Plaintiffs argue that because Glaser Weil provided the MFAA notice to Hooman Automotive Group but did not explicitly name corporate entities HK, RHC, and RHH, and because these entities did not participate in the arbitration proceedings under their corporate names, the court erred in entering judgment against them. Specifically, plaintiffs argue that the court exceeded its powers under the Code of Civil Procedure[7] by naming them in the order confirming the award and judgment.

---

[7] Section 6203, subdivision (b) directs parties to petition for confirmation, correction, or vacation of the arbitration award pursuant to Chapter 4 of Code of Civil Procedure.

Pursuant to Code of Civil Procedure section 1285, "Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award. The petition shall name as respondents all parties to the arbitration and *may name as respondents any other persons bound by the arbitration award*." (Italics added.) "[T]he superior court has only four options when a petition to confirm or vacate an arbitration award is filed. The superior court may (1) confirm the award as made; (2) correct the award and confirm it as corrected; (3) vacate the award; or (4) dismiss the proceeding." (*Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert* (2011) 194 Cal.App.4th 519, 527–528; citing Code Civ. Proc., § 1286.) Under Code of Civil Procedure section 1286.6, subdivisions (a) and (c), the trial court may correct the award and confirm it as corrected if the court determines that there "was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award" or "[t]he award is imperfect in a matter of form, not affecting the merits of the controversy." (See *Century City Medical Plaza v. Sperling, Isaacs & Eisenberg* (2001) 86 Cal.App.4th 865, 877.)

Asserting HK, RHC, and RHH were "added" to the award, plaintiffs contend the trial court did not have the power to "correct" the arbitration award "to add a party who was not named in the arbitration as a party to the judgment confirming that award."

We disagree with plaintiffs' characterization that the trial court "added" HK, RHC, and RHH to the award. Rather, it appears the trial court, applying Code of Civil Procedure section 1286.6, subdivision (c), corrected the fictious business name "Hooman Automotive Group" to reflect the business entities that

operated under that name.  In other words, the correction simply cured the defective business name and had no effect on the merits of the award.  (See *E-Commerce Lighting, Inc. v. E-Commerce Trade LLC* (2022) 86 Cal.App.5th 58, 64 ["Our Supreme Court has stated that the term 'merits,' when used in this context, includes 'all the contested issues of law and fact submitted to the arbitrator for decision.' "].)

We also conclude plaintiffs suffered no prejudice from the way Glaser Weil sought correction.  Plaintiffs had ample notice that Glaser Weil was seeking to have the award entered against HK, RHH, and RHC, even if Glaser Weil did not expressly petition for correction.  Consistent with Code of Civil Procedure section 1285, Glaser Weil's petition named HK, RHH, and RHC, i.e. parties "bound by the arbitration award," as respondents.  Plaintiffs also fully briefed their objections to being named in the judgment on the award in both their opposition to the petition and their objections to the proposed findings of fact and conclusions of law.

Further, the record supports the trial court's conclusion that although HK, RHC, and RHH did not utilize their corporate names in the arbitration proceedings, they "are parties to the Engagement Letter, as amended, and are parties to the Award, which may be confirmed against them."  HK, RHC, and RHH all utilized the fictious business name "Hooman Automotive Group," which did engage in the arbitration and had entered into engagement agreements with Glaser Weil.  Via the initial 2013 engagement agreement, HK, which was then doing business as Hooman Automotive Group, engaged Glaser Weil's services using the fictious business name.  In the 2019 amendment to that engagement agreement, Nissani acknowledged that he and his

24

"related entities" owed Glaser Weil $974,026.84.  It was reasonable to conclude that the related entities included RHC and RHH, which were formed in 2015 and 2016.  Also, the parties' October 2020 engagement agreement for proceedings before the CDTFA provided:  "The Firm will represent you [Nissani], individually and the members of the Hooman Automotive Group identified above in this letter, all of which are managed by you as Corporate President."  The CDTFA engagement agreement specifically identified HK, RHC, and RHH, as well as four other entities, as the members of the Hooman Automotive Group.[8]  Notably, of the seven entities doing business as Hooman Automotive Group, only HK, RHH and RHC sued Glaser Weil for breach of the 2013 engagement agreement and subsequent amendments, and sought to set aside the arbitration award.

Plaintiffs argue "even if HK, RHH and RHC 'sometimes' used the same name as other businesses, that does not mean they should be treated as each other for all purposes.  Rather, it would be necessary to establish that when 'Hooman Automotive Group'

---

[8]     Plaintiffs assert that the CDTFA engagement agreement is not proof that RHC and RHH did business as Hooman Automotive Group because the fee arbitration did not involve any fees from work on the CDTFA matter.  We note plaintiffs fail to provide a citation to the record supporting their contention that the arbitration did not involve fees from the CDTFA matter.  Nonetheless, the CDTFA engagement agreement, signed by Nissani, constituted an admission that RHC and RHH do business as Hooman Automotive Group.  Additionally, the 2019 amendment to the initial engagement agreement implicated RHC and RHH as clients since it stated that Nissani's "related entities" owed Glaser Weil substantial fees.

25

was given notice by the Firm and when 'Hooman Automotive Group' elected to participate in the MFAA, that it was acting in its capacity as the purported dba for HK, RHH and RHC." However, plaintiffs themselves, which included HK, RHH, and RHC, admitted in their complaint that in "2013, Plaintiffs engaged Defendant to perform legal services on its behalf. For the next eight (8) years, Defendant performed legal services for Plaintiffs on a variety of matters." They also stated in their complaint that "Plaintiffs now seek to set aside the non-binding arbitration award served on Plaintiffs on November 10, 2021 and allege that Defendant breached its contractual obligations to Plaintiffs." These factual statements were judicial admissions that plaintiffs HK, RHH, and RHC received legal services from Glaser Weil and were subject to the arbitration award.[9] (See *Williams v. Doctors Medical Center of Modesto, Inc.* (2024) 100 Cal.App.5th 1117, 1140 [a factual statement in a pleading may constitute a judicial admission when it is an unequivocal concession of the truth of a matter].)

"Use of a fictitious business name does not create a separate legal entity. . . . 'The business name is a fiction, and so too is any implication that the business is a legal entity separate from its owner.'" (*Pinkerton's, Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342, 1348.) Given that Hooman Automotive Group received the MFAA notice, engaged in the arbitration, and

---

[9] To the extent plaintiffs assert HK's registration in which it asserted it was "doing business as" Hooman Automotive Group created a rebuttable presumption that HK had exclusive use of the name under section 14411, the evidence discussed herein rebutted that presumption and showed that RHH and RHC also did business as Hooman Automotive Group.

disputed the very billing that HK, RHH, and RHC subsequently sued Glaser Weil for, it would be a fiction to assert that HK, RHH, and RHC were not also a part of the arbitration. In urging that HK, RHH, and RHC were uninvolved in arbitration, plaintiffs attempt to avoid the consequences of the very forum they selected to redress their claims against Glaser Weil. But, "in litigation as in life, you can't have your cake and eat it too." (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 555 [concluding a party could not engage in the benefits of litigation, like discovery, and then compel arbitration].) We conclude the record supported the trial court's correction of the arbitration award to reflect that the corporations operating as Hooman Automotive Group were subject to the award. The court properly confirmed the arbitration award and entered judgment against HK, RHH, and RHC.

*b. Nissani*

Finally, plaintiffs argue that the judgment must be vacated as to Nissani "because he did not agree to participate in the MFAA in his individual capacity." Nissani asserts the only client named on the request for arbitration was Hooman Automotive Group, and Nissani signed the arbitration request form only in his capacity as an officer of Hooman Automotive Group.

We are unpersuaded. As explained thoroughly above, Hooman Automotive Group is not an entity of which Nissani can be an officer. It is a fictitious business name used by multiple corporations under Nissani's control. In addition, where Nissani signed the request, he did not indicate he was signing solely in his capacity as an officer or president.

Moreover, all four legal services contracts signed by Nissani reflect that Nissani had entered into the agreements in

27

his individual capacity and on behalf of his corporate entities. The 2013 engagement agreement stated Glaser Weil was to represent Hooman Automotive Group and Nissani, "individually." The 2019 amendment stated Nissani "personally" owed Glaser Weil fees, and the 2020 agreement indicated that Nissani, "as an individual," was a party to it. Nissani signed the 2019 and 2020 amendments twice: first as "Hooman Michael Nissani, Individually," and again as president of Hooman Automotive Group. The 2020 CDTFA engagement agreement stated that Glaser Weil would be representing Nissani individually. Nissani also declared in the trial court that Glaser Weil "provided legal services to me and to various business entities in which I have an ownership interest and/or manage." Like the corporate defendants, Nissani admitted in the complaint that he, as one of the plaintiffs, engaged Glaser Weil in 2013, received services from Glaser Weil for eight years, and was the losing party in the fee arbitration award issued in favor of Glaser Weil.

Further, the arbitration panel's September 4, 2021 notice of hearing explicitly identified Hooman Automotive Group *and Hooman Nissani* as the clients. Nothing in the record shows that Nissani objected to being named a party to the proceeding. When the panel issued its award, it again identified Nissani as a client. Nissani did not object to being named a party in this instance either.

Substantial evidence thus supports the trial court's confirmation of the arbitration award and entry of judgment against Nissani in his individual capacity.

## DISPOSITION

The judgment is affirmed.  Respondent Glaser Weil Fink Howard Avchen & Shapiro LLP is awarded its costs on appeal.

EDMON, P. J.

We concur:

LAVIN, J.

ADAMS, J.